IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STATE OF ILLINOIS, a sovereign state; and the CITY OF CHICAGO, an Illinois municipal corporation,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, in his official capacity as Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement; SAMUEL OLSON, in his official capacity as Field Director for U.S. Immigration and Customs Enforcement; U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; U.S. BORDER PATROL; MICHAEL W. BANKS, in his official capacity as Chief of U.S. Border Patrol; and GREGORY BOVINO, in his official capacity as Senior Officer of the Department of Homeland Security and Illinois tactical commander,<br><br>Defendants. | ) | Case No. 26 C 321<br><br>Chicago, Illinois<br>January 22, 2026<br>3:31 p.m. |

TRANSCRIPT OF PROCEEDINGS - IN-COURT HEARING
BEFORE THE HONORABLE SARA L. ELLIS

APPEARANCES:

For the Plaintiff State of Illinois: OFFICE OF THE ILLINOIS ATTORNEY GENERAL
BY: MR. VIKAS K. DIDWANIA
MR. PAUL BERKS
115 S. LaSalle Street
Chicago, Illinois 60603

For the Plaintiff City of Chicago: CITY OF CHICAGO
BY: MS. REBECCA A. HIRSCH
30 N. LaSalle Street, Suite 1230
Chicago, Illinois 60602

For the Defendants: U.S. DEPARTMENT OF JUSTICE
BY: MR. ANDREW I. WARDEN (remote)
1100 L Street NW
Washington, DC 20005

Court Reporter: KELLY M. FITZGERALD, RPR, RMR, CRR
Official Court Reporter
219 S. Dearborn Street, Room 1412
Chicago, Illinois 60604
(312) 818-6626
kmftranscripts@gmail.com

* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court:)

THE CLERK: We have 26 CV 321, State of Illinois, et al. v. The Department of Homeland Security, et al.

Go ahead, Counsel.

MR. DIDWANIA: Good afternoon, Your Honor. Vikas Didwania on behalf of the State of Illinois.

MR. BERKS: Paul Berks also on behalf of the State of Illinois.

MS. HIRSCH: Rebecca Hirsch on behalf of the City of Chicago.

THE COURT: Then for the defendants?

MR. WARDEN: Andrew Warden for the defendants.

THE COURT: All right. And do we have Ms. -- is Ms. Hedges also --

MR. WARDEN: She's not planning to participate in this --

THE COURT: Okay.

MR. WARDEN: -- this particular matter.

THE COURT: Okay. All right.

So then, Mr. Warden, have you had a chance to talk to plaintiffs' counsel about how we want to proceed? I would presume that the government is going to intend on responding to the complaint by way of a motion. Would that be fair?

MR. WARDEN: Yes, Your Honor. Our understanding our response to the complaint is due in -- in mid-March. We have

not had any discussions with plaintiffs' counsel so we would presume to respond to the complaint on that timeline absent any, you know, further motion practice.

THE COURT: Okay. All right.

MR. DIDWANIA: If I could raise a few things, Your Honor.

THE COURT: Sure.

MR. DIDWANIA: First, we, the plaintiffs in this case, have been in conversation with plaintiffs' counsel in the Chicago Headline Club case. It's my understanding that the plaintiffs' counsel in that case are willing to and able to give us a copy of the discovery materials that they received in that case and can do so on a relatively short timeline which is something that we would like to receive as well, Your Honor.

I know that you just dismissed the case, but to the extent that your confidentiality order in that case continues to apply, we think that's the only potential impediment from them being able to give us that information, assuming that --

THE COURT: Then let me stop you right there.

Mr. Warden, do you have any objection to allowing plaintiffs' counsel to provide in the Chicago Headline case to counsel in the State of Illinois case the discovery that the government produced? And what we can do is if it's by agreement, enter the same confidentiality order that we had in the Chicago Headline case.

MR. WARDEN: Your Honor, I would like the opportunity to confer with our clients on that before we consent. This is the first I've heard of this so, you know, we can take that back and file -- file a status, you know, next week once I get a chance to make sure everybody is aware of that request and assess positions if that's appropriate.

MR. DIDWANIA: The sooner the better, Your Honor. I think plaintiffs' counsel is ready to give us that information quickly and we really don't see any reason to delay.

And the other thing I would add is we would like to think a little more about the potential protective order that would apply in our case. So what we would propose instead is that the protective order in the Chicago Headline Club case be amended to allow production to us and that we could continue to be bound by that protective order while we discuss with defendants whether any protective order is appropriate in our case going forward.

THE COURT: Okay. That --

MR. WARDEN: Your Honor, a couple -- couple of points, if I may.

I mean, first, the overwhelming majority of the discovery has been made public through Your Honor's orders. The videos are largely public. The reports are largely public. So, you know, I think the Illinois plaintiffs could certainly access those materials.

You know, it sounds like basically prediscovery before we've even had a chance to respond to the complaint to potentially dismiss this matter or certainly narrow it. So, you know, I'm not sure, you know, we would agree to negotiate a protective order for, you know, further discovery before we've even had a chance to -- to test the complaint here.

So, you know, we will certainly consider the request to provide the discovery under the same terms and conditions that we did in Chicago Headline Club, but I think it's certainly premature to start down this road of modifying the orders and engaging in sort of a prediscovery process before the normal process has run its course under Rule 12.

THE COURT: So let's -- let's do this.

So why don't I have the government talk to its clients and assess your position on whether plaintiffs in the Chicago Headline Club would be able to essentially provide all the discovery that was provided to them, to the plaintiffs in the State of Illinois case. And let's see what the government's position is on that. I mean, at the very least it appeals to my sense of efficiency. But we can see what the government's position is on that.

And then I guess it would be -- I would be interested to know, and I wouldn't necessarily hold the government to this but in a month, say, so I know your responsive pleading is due essentially around March 12th, somewhere in there, whether the

government would be moving to dismiss the entire complaint or whether there are certain claims that the government is going to answer and then move to dismiss other claims. That way we can at least plan out the discovery and see how the case is going to progress and proceed. Because if there are some claims that the government is going to answer -- and I'm just throwing this out as an example. For example, should the government decide that it's going to answer the essentially Fourth Amendment excessive force claims, but move to dismiss the, you know, other claims, there are ways that I think we could kind of move forward on parallel tracks.

So that's a thought that I have. Happy to hear what folks think about that.

MR. DIDWANIA: If I could share one reaction, Your Honor, on that is we're of course very interested as well to hear what defendants' potential plans may be in responding to the complaint. And maybe one way to do that is to incorporate that as part of the initial status report that you require to be filed in each civil case. And given the complexity of this case and the several claims that are at issue, we think maybe it's better to do that earlier rather than later. And if we could do like an initial status report within 30 days to at least start the conversation of what the discovery plan could be and all the other items that are in your standard report, we think that might be helpful in moving

this case forward quickly.

THE COURT: And, Mr. Warden, what are your thoughts on that?

MR. WARDEN: Your Honor, we don't have an objection to doing a status in 30 days. We may not know exactly what we're going to do, but we can report, you know, our intentions at the time.

THE COURT: Yeah. And that's fine. And I'm not going to -- you know, if you tell me in 30 days you're planning on answering some of the claims and not others and then as it gets closer you change your mind, you know, you are certainly within your rights to do that, and I'm not going to say that you can't.

So why don't we do this. Why don't I see everybody -- why don't I see everybody Thursday the 19th at 2:30. Does that work for folks?

MR. DIDWANIA: That works for plaintiffs, Your Honor.

THE COURT: Does that work for you, Mr. Warden?

MR. WARDEN: Yes, Judge. Thank you.

THE COURT: Okay. And then if I could get the initial joint status report by the 12th of February.

And as I said, Mr. Warden, I'm not going to hold you to what you say you will do in the status report in terms of how you would address the complaint. It's more just to get an idea.

MR. WARDEN: Understood. We appreciate that.

THE COURT: Okay. And between now and then, I think it would also be a good idea to talk about a confidentiality order in the State of Illinois case to at least start talking about it and see if we can get something in place so that we'd be -- once things get moving, we'd be ready to go if they get moving.

So I think it would be helpful to just at least start talking about it and identifying if there are issues where the parties disagree that you could highlight those for me in the initial status report so I can start thinking about that.

And then if in a week, Mr. Warden, you could file something on the docket just letting me know what the government's position is as to allowing plaintiffs in the Chicago Headline case to provide the discovery that the government provided to them to the plaintiffs in the State of Illinois case and all covered under the protective order that was entered in the Chicago Headline case.

MR. WARDEN: Yes, Judge, will do.

THE COURT: Okay. All right. Am I missing anything?

MR. DIDWANIA: Nothing else from us, Judge.

THE COURT: Okay. Mr. Warden, am I missing anything?

MR. WARDEN: No. Thank you.

THE COURT: Okay. All right. Then we'll see everybody February 19th then.

MR. DIDWANIA: Thank you, Your Honor.

THE COURT: All right. Thank you.

(Concluded at 3:45 p.m.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ KELLY M. FITZGERALD* *January 23, 2026*
KELLY M. FITZGERALD, RPR, RMR, CRR
Official Court Reporter