# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STATE OF ILLINOIS, a sovereign ) Case No. 26 C 321
state; and the CITY OF CHICAGO, )
an Illinois municipal )
corporation, )
)
Plaintiffs, )
)
v. )
)
DEPARTMENT OF HOMELAND )
SECURITY; KRISTI NOEM, in her )
official capacity as Secretary )
of the Department of Homeland )
Security; U.S. IMMIGRATION )
AND CUSTOMS ENFORCEMENT; TODD )
M. LYONS, in his official )
capacity as Senior Official )
Performing the Duties of the )
Director of U.S. Immigration )
and Customs Enforcement; )
SAMUEL OLSON, in his official )
capacity as Field Director )
for U.S. Immigration and )
Customs Enforcement; U.S. )
CUSTOMS AND BORDER PROTECTION; )
RODNEY S. SCOTT, in his )
official capacity as )
Commissioner of U.S. Customs )
and Border Protection; U.S. )
BORDER PATROL; MICHAEL W. )
BANKS, in his official )
capacity as Chief of U.S. )
Border Patrol; and GREGORY )
BOVINO, in his official )
capacity as Senior Officer of )
the Department of Homeland )
Security and Illinois )
tactical commander, ) Chicago, Illinois
) February 19, 2026
Defendants. ) 2:54 p.m.


TRANSCRIPT OF PROCEEDINGS - IN-COURT HEARING
BEFORE THE HONORABLE SARA L. ELLIS

2

APPEARANCES:

For the Plaintiff        OFFICE OF THE ILLINOIS ATTORNEY GENERAL
State of Illinois:       BY:  MR. VIKAS K. DIDWANIA
                              MR. PAUL BERKS
                         115 S. LaSalle Street
                         Chicago, Illinois 60603


For the Plaintiff        CITY OF CHICAGO
City of Chicago:         BY:  MS. REBECCA A. HIRSCH
                         30 N. LaSalle Street, Suite 1230
                         Chicago, Illinois 60602

For the Defendants:      U.S. DEPARTMENT OF JUSTICE
                         BY:  MR. CLIFFORD L. REEVES, II (remote)
                         1100 L Street NW
                         Washington, DC 20005

Court Reporter:          KELLY M. FITZGERALD, RPR, RMR, CRR
                         Official Court Reporter
                         219 S. Dearborn Street, Room 1412
                         Chicago, Illinois  60604
                         (312) 818-6626
                         kmftranscripts@gmail.com

                              *   *   *   *   *

                    PROCEEDINGS REPORTED BY STENOTYPE
          TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

3

(Proceedings heard in open court:)

THE CLERK:  Case 26 CV 321, State of Illinois, et al. v. Department of Homeland Security, et al.

MR. DIDWANIA:  Good afternoon, Your Honor.  Vikas Didwania on behalf of the State of Illinois.

MR. BERKS:  Paul Berks also on behalf of the State of Illinois.

MS. HIRSCH:  Rebecca Hirsch on behalf of the City of Chicago.

THE CLERK:  And for the Department of Homeland Security, counsel, state your name for the record.

MR. REEVES:  Lee Reeves for the United States.

THE COURT:  All right.  Good afternoon, everybody. And welcome, Mr. Reeves.  This is your first time with us.

MR. REEVES:  Thank you.

THE COURT:  Okay.  So I got the government's statement essentially on the issue of sharing the discovery from the Chicago Headline Club case.

Do plaintiffs have any objection to operating under the protective order entered in that case for those documents at least until we get one squared away here?

MR. DIDWANIA:  That's exactly right, Your Honor.  We don't have any issues with that.

The only thing I would suggest is -- just to cross our Ts and dot our Is that the protective order in that case be

4

changed or amended to reflect that we are considered a party for the purposes of that protective order. And when it refers to this action or this litigation, that includes our litigation here so that we can act consistent with the protective order.

THE COURT: Any objection to that, Mr. Reeves?

MR. REEVES: No, Your Honor, that's fine.

THE COURT: Okay. Just trying to think technically how to do that because that case is closed.

MR. DIDWANIA: If you enter an order in our case, Your Honor, that reflected that, I think we'd be comfortable with that.

THE COURT: Okay. So that's what I'll do, is I'll just enter in today's minute order that we are modifying the protective order entered in the Chicago Headline Club case to include the plaintiffs in this case as a party and that plaintiffs in this case agree to be bound by the terms of the protective order in that case.

Is that good?

MR. DIDWANIA: That works for us, Your Honor.

THE COURT: Okay.

All right. Then turning to where we are here. Given that you are getting all the discovery in that case, in the Chicago Headline case, kind of full scale, what are your -- what additionally I guess are you looking at that you would want or need now while we're kind of working through the motion

to dismiss?

MR. DIDWANIA: Sure, Your Honor.

So the excessive force claim is one of just many claims that we assert.

THE COURT: Right.

MR. DIDWANIA: And so the Chicago Headline Club would only encompass I think one set of several claims.

I think in terms of just prioritizing, I think getting the complete administrative record from the government as to each of our APA claims would be helpful to prevent delays. I think they could start gathering that information and producing it to us or indicate they don't have any, you know, records, responsive records. So I think that's one bucket.

The other is we've got a Tenth Amendment claim that alleges this motive of retaliation, punishment, and coercion.

THE COURT: Mm-hmm.

MR. DIDWANIA: And so we would want records related to that. And there, it's a little bit hard for me to know, just not knowing what they have, but we're thinking, you know, memos, e-mails related to Operation Midway Blitz and the implementation of that and the reasons for the implementation of that operation.

THE COURT: Okay. And obviously defendants would like a stay until I rule on the motion to dismiss, correct?

MR. REEVES: Yes, Your Honor, that's exactly right.

THE COURT: Okay.

MR. DIDWANIA: If I could just add one more thing, Your Honor --

THE COURT: Sure.

MR. DIDWANIA: -- in terms of timing.

And I'm happy to talk more about the -- their -- their motion to stay that may be filed.

But the other reason that we're really concerned about timing here, Judge, is as we allege in our complaint, the defendants have repeatedly stated that they're not done with Chicago and has publicly reported that they will be back in the spring with maybe a thousand agents which would be approximately four times the number of agents in Operation Midway Blitz.

And so we don't want to end up in a position when we're litigating all of this and trying to do discovery in the context of a TRO or a PI. So that's part of why we've tried to set this schedule. So it's -- I think it's a lengthy discovery schedule but still allow for, like, movement now so it's not all chaos later.

THE COURT: Yeah. And I definitely would like to try to avoid as much chaos as possible. And I am looking at the docket, and I do not see a briefing schedule at all.

All right. So it looks --

MR. REEVES: Your Honor, not to interrupt, but if this

is helpful on a briefing schedule, I would anticipate that we would file a motion to stay discovery simultaneously with our response to the complaint which, if memory serves, is due March 16th, if that's helpful from a briefing timing scheduling.

THE COURT: Yeah. So I want to do this. Thank you for that.

All right. So what I would like to do is set a briefing schedule on the defendants' motion to dismiss.

So you believe you can get your motion on file by March 16th; is that right?

MR. REEVES: Your Honor, I am -- I am hopeful to do so. As Your Honor is aware, the complaint is extremely lengthy. This is about a 100-page complaint and 19 different claims for relief.

You know, if Your Honor is -- has flexibility in her schedule -- we haven't talked to plaintiffs about it so I don't want to ambush them with anything here, but, you know, a little more time would be helpful, but I don't -- I don't presume that we have it.

THE COURT: Okay. You know, if you can get it done, I would like to get it done and sort of get things moving. You know, the claims are the -- essentially the same as what the plaintiffs filed in Minnesota so it's not as if you haven't seen or dealt with or argued them before. So I -- you know,

there are some differences, obviously, but they are fairly similar, and I would like to get things moving. And they did file this back in January so it's -- you know, it's not as if they filed it yesterday.

So let's -- let's shoot for the 16th. That's, you know, almost a month away, just shy of a month. So let's try to get that done.

When can plaintiffs file a response?

MR. DIDWANIA: We would ask for 30 days, Your Honor.

THE COURT: Sure.

MR. DIDWANIA: April 15th.

THE COURT: And just to short-circuit things, Mr. Reeves, how -- just as a guess, your best guess, how long or how many pages do you think you need? Because I'll let you -- you know, normally it's 15 pages. I don't expect you to get your motion -- I'm not going to hold you to the 15 pages.

MR. REEVES: I candidly can't give you a straight answer to that. I am -- I was prepared to have in my notes to definitely flag for you that we will almost certainly need an extension. As to the magnitude of that extension, you know, I can't say what it is today. Certainly we would work with plaintiffs and grant them any kind of reciprocal extension if they would like one on their -- on their filing.

So I'm happy to work that out with plaintiffs' counsel, or I could get back to the Court quickly if you would

like an answer on that soon.

THE COURT: No, I don't need an answer. Just know that -- I mean, and, again, this is from the woman that issued a 233-page opinion so I get that things can get a little lengthy. Just try to be reasonable and don't kill me with paper.

Do you think you can live with that?

MR. REEVES: Understood, Your Honor. Yes.

THE COURT: Okay. All right. And, of course, you know, plaintiffs the same, just don't bury me in paper.

And then, Mr. Reeves, when would you like to file your reply?

MR. REEVES: I would say probably two weeks after that, so maybe -- let me see -- make sure I don't put it on a weekend. Just at the end of April. That would be roughly two weeks after. So maybe -- maybe the 30th I believe is still a weekday.

THE COURT: It is.

MR. REEVES: If that's acceptable to the Court.

THE COURT: Yep. You want May 1st? I'm feeling so generous.

MR. REEVES: Sure.

THE COURT: All right.

MR. REEVES: Thank you. I appreciate it.

THE COURT: No problem.

All right. Okay. As for the stay, you know, some of the claims may not make it through a motion to dismiss. I'm not prejudging anything, just having, you know, read what was filed and issued up in Minnesota, you know, it may not make it through, but I suspect other claims will make it through the motion to dismiss stage.

What I don't want to have happen, and I know, Mr. Reeves, that you are in no position to say that Operation Midway Blitz is going to ramp up again or that it's not going to ramp up again, right? You are in no position to say either way, I suspect --

MR. REEVES: That's correct, Your Honor, I'm not.

THE COURT: So I guess the one thing that I would say -- whoop -- oh, there we go. I was like, oh, we lost you.

The one thing that I would say is this. The government needs to be prepared, should Operation Midway Blitz ramp up in the spring, so if it is true what was said in the fall that there will be, you know, a thousand Border Patrol and ICE agents deployed to Chicago to do immigration enforcement and it operates in a similar manner that things were going in the fall and, you know, the plaintiffs file a TRO, we are -- I am opening up discovery to deal with the TRO. And so -- and what I will not hear at that point is this is too hard, this is too much, we need more time. Those arguments will not fly with me. And I know your colleagues definitely felt under the gun

in the fall and things were done rapidly and it was hard.

I'm not necessarily going to -- I don't know that we need to jump full bore into discovery right now as things are quiet and we're briefing a motion to dismiss and there's, you know, nothing emergent happening. I'm certainly willing to let the motion to dismiss process play out to see which claims make it through and then have discovery be more focused on those claims. In a normal situation, that seems to make a lot of sense to me, and it's a lot more efficient than sinking discovery on all claims if all claims don't make it through.

But, Mr. Reeves, I mean what I say in that if the situation on the ground changes and we are in a position where we're dealing with a TRO, then it is all hands on deck and everyone's hair is on fire. So do with that information what you will, right? So if it's starting to gather information now in case that happens, great; if not, that's okay, too. But I will not accept any arguments or pushback because, you know, it just seems like it's too hard or too difficult or whatever it is.

Does that make sense?

MR. REEVES: It does, Your Honor. I hear you loud and clear, and I will certainly take it back promptly.

THE COURT: Okay.

So I think that's where I land on the discovery issue, is it's a lot more efficient to see what makes it through the

motions to dismiss as long as nothing's happening right now. But if it does and things change and the plaintiffs file a TRO, then all bets are off, and we will open up discovery so that I can deal with what's in front of me.

MR. DIDWANIA: The one other thing I would suggest, Your Honor, on the discovery point is just it would be helpful if the defendants at least start thinking about the APA claims and if for any of them they'll say that there is no record to produce or at least start to think about whether there's a set of records. I understand what you said about Minnesota, Your Honor, and I believe in that case that was -- the preliminary injunction posture was focused solely on the Tenth Amendment claim.

THE COURT: Right.

MR. DIDWANIA: And so with respect to the APA claims, I think there's a lot lower of a burden in terms of where it's the scope of the universe. And I suspect, I don't know, but I suspect to some extent defendants will say for some of these APA claims, you know, there is no administrative record to produce because that will help speed things along and help us figure out, start to gather our thoughts as to future discovery requests and so on without I think imposing substantial burdens.

So that I would put for your consideration, Judge.

THE COURT: And, Mr. Reeves, that seems kind of

reasonable. Would you at least -- you know, and I would suspect that this would be sort of in the context of a 26(f) conference anyway, but would you be willing to at least look into whether there's going to be anything at all to produce on some of these APA claims?

MR. REEVES: Your Honor, certainly we can -- we are open to having discussions with plaintiffs. As -- as my opposing counsel just flagged for you, I think that we may have sort of, you know, a disagreement about what -- about what the precise agency action that is challenged is and therefore what the scope of the administrative record might be, meaning those are conversations that -- that are hard to have in the abstract, but certainly we're open to sort of, you know, having those -- those discussions. You know, obviously we may -- we may arrive ultimately at different conclusions, but, you know, we're happy to sort of have those kind of conversations.

THE COURT: Okay. All right. That sounds great.

I guess the last thing, Mr. Reeves, that I had thought about as I was preparing for today's hearing is there's a litigation hold that went out, correct?

MR. REEVES: I believe so, Your Honor, but I'm not certain so I want to not overstate. I'm not certain, but I believe so.

THE COURT: So what I would like you to do is confirm that a litigation hold went out, and that if it hasn't that it

goes out and that the litigation hold directs, you know, anyone at these agencies, up to and including the Secretary, right, not to delete e-mails, right, or destroy memos. All of -- or notes, like all of these things need to be preserved.

And because I have said it now, right, because I have now said it, if we later determine that things that should have been preserved have not been preserved, I will make an adverse inference finding.

MR. REEVES: I understand, Your Honor. I'll take it back promptly.

THE COURT: Thank you.

Okay. Anything else then that we need to take up before I set a ruling date?

MR. DIDWANIA: The only other thing on my list, Your Honor, was at the last hearing, you directed the parties to start discussions about a protective order.

THE COURT: Yes.

MR. DIDWANIA: I just wanted to quickly update you on that.

So we have exchanged drafts. The defendants started with the protective order that was entered in the Chicago Headline Club as part of the preliminary injunction proceedings. So there's still differences that remain.

THE COURT: Mm-hmm.

MR. DIDWANIA: We're working through them and

hopefully we can resolve them or tee them up for you as soon as possible.

THE COURT: Perfect. That would be great. Yeah. And if you can't -- you know, if there are issues and you can't resolve them, just file a motion. And that's fine, and I'll take care of that.

All right. And then we'll set a status date for July 30th at 1:30 -- well, actually, 2:30, for a ruling on the motion to dismiss.

And I would like the parties to at least speak to each other and come prepared on that date with a proposed discovery schedule and certainly by that date to know what exists and have talked to each other about what exists with regard to some of the APA claims. And that way we can kind of get the ball rolling.

MR. DIDWANIA: Certainly, Your Honor.

THE COURT: Okay. All right. And if anything comes up between now and then, I'm here. Just let me know.

MR. DIDWANIA: Great.

THE COURT: Okay.

MR. DIDWANIA: Thank you, Judge.

THE COURT: All right. Thank you.

MR. REEVES: Thank you.

(Concluded at 3:21 p.m.)

16

                              *   *   *   *   *

        I certify that the foregoing is a correct transcript

from the record of proceedings in the above-entitled matter.

/s/Kelly M. Fitzgerald                    April 1, 2026

Kelly M. Fitzgerald, RPR, RMR, CRR
Official Court Reporter