**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | Case no: 26-cv-321<br>Judge Sara L. Ellis |

**PLAINTIFFS' MOTION FOR TARGETED DISCOVERY**

During the past two months, according to public reporting, federal immigration agents have continued to engage in the kinds of illegal activity challenged in the Complaint, including use of chemical munitions against Illinois residents, unlawful enforcement activity near Illinois courthouses, unlawful warrantless arrests, and improper use of license plates on their vehicles. Plaintiffs State of Illinois and City of Chicago are concerned that they—and their residents—are suffering irreparable harm from these illegal actions. Plaintiffs seek discovery about these activities to understand their propriety, their extent, and the harm they are causing. Recognizing the need to balance the needs and burdens of discovery during the pendency of the motion to dismiss, Plaintiffs seek narrow and targeted discovery: information about Defendants' use of tear gas and other chemical munitions, their enforcement actions at sensitive locations, their warrantless arrests, and their misuse of license plates only during the last three months. Defendants oppose this motion.

## BACKGROUND

### A. Procedural history

On January 12, 2026, the State of Illinois and the City of Chicago (Plaintiffs) filed a Complaint alleging, among other things, that Defendants implemented seven illegal agency actions that violated the Administrative Procedure Act (APA) and are *ultra vires*: the use of roving patrols with indiscriminate questioning, the capture of residents' biometric information, warrantless arrests that disregarded statutory requirements, the repeated deployment of riot control weapons, enforcement activity at sensitive locations, the concealment and swapping of license plates, and private trespass. Compl., ECF No. 1. Oral argument on Defendants' motion to dismiss the Complaint is scheduled for September 2, 2026.

At the February 19, 2026 status hearing, in staying discovery, the Court explained that, for the sake of efficiency, there was no "need to jump full bore into discovery right now as things are quiet and we're briefing a motion to dismiss and there's, you know, nothing emergent happening." ECF No. 55-1, Tr. 11. The Court also expressed a desire to keep the case moving by directing the parties to discuss discovery of the administrative record and continue to negotiate over the Protective Order. *Id*. at 12-15. The Court entered a protective order on June 17, 2026. ECF No. 66.

On April 23, 2026, the Court authorized the issuance of two third-party subpoenas under Federal Rule of Civil Procedure 45 to obtain discovery produced in two cases that raise similar claims. In doing so, the Court explained it would be more

efficient to "have some of these [discovery] fights now." Ex. 1, Tr. 15. Pursuant to the Court's order, in May 2026, Plaintiffs served subpoenas on plaintiffs in the *Vasquez Perdomo v. Noem*, 25-cv-05605 (C.D. Cal.) and *Castanon Nava v. DHS*, 18-cv-03757 (N.D. Ill.) (Cummings, J.) cases. Plaintiffs have received materials produced by Defendants in the *Castanon Nava* case. As to the *Vasquez Perdomo* subpoena, Defendants filed in the Central District of California a motion to quash the subpoena. Plaintiffs here moved to transfer the motion to this Court, pursuant to Rule 45(f), and are waiting for a decision on the transfer motion. Plaintiffs have not received any documents pursuant to the *Vasquez Perdomo* subpoena.

**B. Reports of continued illegal immigration enforcement activities**

Numerous news sources have reported increased ICE activity in the Chicago area in the past two months.[1] Some of these reports identify continued implementation of agency actions challenged in this lawsuit. For example, last month, the Chicago Tribune reported that ICE enforcement at or near local courthouses is "stubbornly persistent," raising concerns that it was "making it very difficult for people to access justice here in Illinois."[2] According to the same article, Defendants responded that immigration enforcement near courthouses is "commonsense." Counts 11 and 12 of the Complaint allege that immigration

---

[1] See, for example, the following articles: https://www.nbcchicago.com/news/local/chicago-back-of-the-yards-logan-square-immigration-ice-activity/3959796/ (Exhibit 2); https://abc7chicago.com/post/ice-chicago-community-groups-attorneys-elected-leaders-report-renewed-immigration-enforcement-activity-area/19477126/ (Exhibit 3); https://blockclubchicago.org/2026/07/09/ice-arrests-are-on-the-rise-in-chicago-heres-what-immigrants-need-to-know/ (Exhibit 4).

[2] https://www.chicagotribune.com/2026/07/12/courthouse-immigration-arrests/ (Exhibit 5).

enforcement at sensitive locations, including at Illinois courthouses (Count 11), violates the APA. The Complaint alleges that Defendants acted in an arbitrary and capricious manner in replacing prior policies that severely restricted immigration enforcement activity near sensitive locations, including courthouses, ¶ 211-12, with a new policy of arbitrary enforcement, ¶ 214. As explained in Plaintiffs' notice of supplemental authority, ECF No. 70, a district court in the Northern District of California recently vacated Defendants' courthouse arrest policy for violating the APA. *See Carmen Aracely Pablo Sequen, et al., v. Sergio Albarran, et al.*, 25-cv-06487 (PCP), 2026 WL 1805114 (N.D. Cal. June 23, 2026).

In another example of recent ICE activity, a video posted publicly on July 4, 2026, appears to show an immigration agent shooting a chemical munition at Broadview protesters while driving away:[3]



[3] https://www.instagram.com/reel/DabcKEvssks/ (Exhibits 6a, 6b). Exhibit 6a is a screenshot of the webpage, and Exhibit 6b is a copy of the embedded video. Video exhibits will be submitted through the online portal.

Yet another video, posted publicly on July 15, 2026, appears to show immigration agents firing a chemical munition at a vehicle with children in it.[4] The posting claims agents arrested a U.S. citizen without a warrant. Counts Seven and Eight challenge illegal warrantless arrests, including of U.S. citizens, and Counts Nine and Ten challenge the improper use of chemical munitions, all in violation of the APA.

Another video, posted publicly in late June 2026, shows an ICE agent aggressively confronting a teenager who was recording and noting the fact that the vehicle was missing a rear license plate.[5] The video shows the missing license plate. Counts 13 and 14 of the Complaint allege Defendants used vehicles without appropriate license plates in violation of the APA. The Complaint notes that residents reported hundreds of instances of illegal plate switching and that Defendants publicly stated they would not use license plates that could confirm their vehicles. Compl. ¶¶ 272, 282.

## ARGUMENT

In staying discovery, the Court pointed out two things: "things are quiet" "right now" and the motion to dismiss was being briefed. ECF No. 55-1, Tr. X. These conditions have now changed. The motion to dismiss is briefed and, importantly,

[4] https://x.com/irlandarra2019/status/2077348513390666072?s=20 (Exhibits 7a, 7b).

[5] https://www.facebook.com/tangotangox/videos/breaking-in-the-chicago-suburbs-an-ice-agent-assaults-a-teenager-for-filming-his/1036548902220211/ (Exhibits 8a, 8b); https://www.reddit.com/r/illinois/comments/1ufnhyp/aggressive_ice_agent_and_illegal_plate_cover_625/ (Exhibit 9).

things are no longer quiet. Based on public reporting, Defendants appear to be engaging in illegal activities challenged in the Complaint.

As described above, Defendants are engaging in enforcement activities at sensitive locations, including at courthouses. Illinois operates its courthouses to allow litigants, witnesses, and the public to vindicate important rights. These systems only work when Illinois residents can safely utilize these resources. Compl. ¶ 245. Unlawful immigration enforcement at courthouses has disrupted state proceedings, rendered victims and witnesses increasingly reluctant to participate in court proceedings, burdened court staff, and threatened the functioning of the court system. Compl. ¶¶ 247-49.

The same is true for the continuing unlawful uses of chemical munitions and license plates and continuing warrantless arrests. Beyond harming residents, these activities threaten to undermine accountability efforts and, ultimately, the relationship of trust between Illinois residents and law enforcement. Once incurred, these harms can be impossible to repair.

Plaintiffs request leave to seek limited and targeted discovery concerning these activities over the past three months for three reasons: to evaluate in an orderly fashion the need for a preliminary injunction motion, to protect relevant evidence, and, to the extent the Court finds it necessary, to contest Defendants' assertion of a lack of imminence and recurrence. A list of proposed discovery requests is included at the end of this motion.

*First*, rather than filing a preliminary injunction motion that could result in chaotic discovery proceedings and legal briefing, Plaintiffs propose a process that will allow for an orderly discovery process that will help Plaintiffs assess whether a preliminary injunction motion is warranted (and more orderly preliminary injunction proceedings, if necessary). As noted above, the kinds of harm caused by these activities are necessarily irreparable—there is no way, for example, to unwind reduced trust in law enforcement or undo the fear that leads a victim of domestic violence to not appear in court.

Defendants have custody over critical information concerning these continuing actions. For example, Defendants possess internal reports about enforcement actions at courthouses in Illinois. Presumably, they also possess internal reports about the use of chemical munitions. Plaintiffs also seek policy documents to contextualize these actions. These documents will help Plaintiffs assess whether these activities fall within the claims alleged in the Complaint and the extent of the illegal activity that may be causing harm to Plaintiffs and their residents.

To reduce burdens on Defendants, Plaintiffs propose seeking discovery only for incidents occurring in the last three months. If there are only a few incidents, these discovery requests should be minimally burdensome. *See Robinson v. Walgreen Co.*, 2021 WL 2453069, at *4 (N.D. Ill. June 16, 2021) (declining to extend a discovery stay while a motion to dismiss was pending where case had been pending "for nearly a year" and instead ordering "focused discovery").

*Second*, Plaintiffs are concerned that the information sought may become unavailable if discovery is delayed. Plaintiffs need access to records now to identify potential witnesses who otherwise may become unavailable due to deportation or other circumstances and whose memories may fade. *See CMG Worldwide Inc. v. Adidas Am., Inc.*, No. 1:17-CV-2356-RLM-DML, 2018 WL 7140117, at *3 (S.D. Ind. Sept. 26, 2018) ("First, the court considers the fact that, in effect, [the defendant] has already had the benefit of a lengthy stay, because this case was filed well over a year ago. Second, a stay that extends even further could prejudice the plaintiff's ability to develop its case, because the passage of time tends to erode proof of claims and damages."). For example, recordings may show witnesses who will need to be identified and located. These witnesses may move or be deported. Their memories may fade, or they may not retain corroborating photos and videos.

These concerns are exacerbated by public reporting indicating that Defendants may not retain corroborating information.[6] For example, public information indicates that Defendant U.S. Border Patrol maintains no documentation of stops that do not lead to arrests, a critical lapse given that incidents involving the unlawful use of chemical munitions and license plates may not result in arrests. Further, ICE has recently shifted its practice away from using Field Operations Worksheets (FOWs) to less detailed targeting sheets. *Vasquez Perdomo*, ECF No. 211, at 14-15. Public reports also indicate that the FBI informed agents it would no longer investigate

[6] In the *Vasquez Perdomo* case, the district judge held the federal government in contempt for not complying with a discovery order requiring forensic imaging of phones used by agents during their operations. *See Vasquez Perdomo*, ECF No. 635. Critical information may be on the personal or work phones of the agents engaged in the recent actions.

confrontations with immigration agents, a process that naturally resulted in the gathering and preservation of evidence.[7] Plaintiffs need to obtain information about the nature of Defendants' activities over the last three months to capture critical information now and move quickly, if needed, to preserve witness recollections.

*Third*, Defendants, in their motion to dismiss, repeatedly argued that Plaintiffs no longer could show they were facing imminent harm given the winddown of Operation Midway Blitz. ECF. No. 44 at 6-7, 12-13, 15. Plaintiffs responded by noting they need not show imminence to win on their APA claims and have sufficiently shown such imminence to obtain injunctive relief. ECF No. 59 at 22. To the extent the Court agrees with Defendants that further evidence of imminence based on recent activities is relevant, these documents would help provide that evidence.

**Proposed Discovery Requests**

1. All documents and communications, including any recordings, regarding the presence of ICE or CBP agents at or near a state or local courthouse in Illinois between June 1, 2026 to the present.

2. Policies, written or unwritten, governing the presence of ICE or CBP agents at or near a state or local courthouse in Illinois between June 1, 2026 to the present.

3. All documents and communications, including any recordings, regarding the use of chemical munitions by ICE or CBP agents in Illinois between June 1, 2026 to the present.

4. Policies, written or unwritten, governing use of chemical munitions by ICE or CBP agents in Illinois between June 1, 2026 to the present.

[7] https://www.nytimes.com/2026/07/19/us/politics/fbi-ice-agents-investigations-shootings.html (Exhibit 10).

5. All documents and communications regarding the use or placement of license plates on vehicles used by ICE or CBP agents in Illinois between June 1, 2026 to the present.

6. Policies, written or unwritten, governing the use or placement of license plates on vehicles used by ICE or CBP agents in Illinois between June 1, 2026 to the present.

7. All documents and communications regarding warrantless arrests by ICE or CBP agents in Illinois between June 1, 2026 to the present. The term "warrantless arrest" refers to any arrest made by any employee or agent of Defendants pursuant to 8 U.S.C. § 1357(a)(2), without, or prior to, the issuance of an Administrative Warrant (Form I-200) or pursuant to an Administrative Warrant without an accompanying Notice to Appear.

8. Policies, written or unwritten, governing warrantless arrests by ICE or CBP agents in Illinois between June 1, 2026 to the present.

9. Organizational charts to show the chain of command for ICE and CBP agents in Illinois between June 1, 2026 to the present, as well as the roles and responsibilities for those on the charts.

10. Documents sufficient to show the number of ICE and CBP personnel operating in Illinois between June 1, 2026 to the present.

DATE: August 26, 2026

Respectfully submitted,

KWAME RAOUL
*Attorney General of Illinois*

by:

*/s/ Vikas Didwania*
CARA HENDRICKSON
Executive Deputy Attorney General
PAUL BERKS
VIKAS DIDWANIA
Complex Litigation Counsels
Office of the Illinois Attorney General
115 South LaSalle Street

31st Floor
Chicago, Illinois 60603
(312) 814-3000
Vikas.Didwania@ilag.gov

*Counsel for the State of Illinois*

MARY B. RICHARDSON-LOWRY
Corporation Counsel of the City of Chicago

By: */s/ Rebecca Hirsch*
Stephen Kane
John Hendricks
Rebecca Hirsch
Chelsey Metcalf
Rachel Zemke
Psalm Brown
John Kauffman
City of Chicago Department of Law
121 North LaSalle Street, Room 600
Chicago, Illinois 60602
312-744-6934
stephen.kane@cityofchicago.org
*Counsel for the City of Chicago*