FILED
9/17/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

3BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

BRANTLEY T. MAYERS
Counsel to the Assistant Attorney General
Civil Division

ANDREW I. WARDEN
C. LEE REEVES, II
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Telephone: (202) 616-0773
E-mail: Lee.Reeves2@usdoj.gov

JONATHAN A. ROBBINS
Civil Division, Office of Immigration Litigation
450 5th Street NW
Washington DC 20044
(202) 305-8275
Jonathan.A.Robbins@usdoj.gov

*Attorneys for the United States*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

**In re Subpoena to Coalition for Humane Immigrant Rights (CHIRLA)**

Served in the United States District Court for the Northern District of Illinois (Case No. 26-cv-321)

STATE OF ILLINOIS *et al.*,
Plaintiff,

No.

**UNITED STATES OF AMERICA'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH SUBPOENA ISSUED BY THE STATE OF ILLINOIS AND THE CITY OF CHICAGO TO COALITION FOR HUMANE IMMIGRANT RIGHTS**

Hearing Date:

v.

DEPARTMENT OF HOMELAND SECURITY, *et al.*,
Defendants.

Hearing Time:
Ctrm:

Hon.

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that as soon as the matter may be heard before the United States District Court for the Central District of California, the United States of America will and hereby does move this Court for a protective order and an order quashing the subpoena issued to Coalition for Humane Immigrant Rights by the State of Illinois and the City of Chicago pursuant to Federal Rules of Civil Procedure 26 and 45. The subpoena was issued in support of a civil action filed in the United States District Court for the Northern District of Illinois, *State of Illinois et al. v. Department of Homeland Security et al.*, Case No. 26-cv-321 (N.D. Ill.).

Good cause exists to grant this Motion because the overly broad and unduly burdensome subpoena seeks irrelevant and privileged federal government documents belonging to the United States that the federal government has produced to Coalition for Humane Immigrant Rights under a protective order in civil discovery in *Vazquez Perdomo v. Mullin*, 2:25-cv-05605-MEMF-SP (C.D. Cal.).

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities and attached exhibits, and upon such other and further arguments, documents, and grounds as may be advanced in the future.

This motion is made following a conference of counsel for Coalition for Humane Immigrant Rights, the State of Illinois, and the City of Chicago pursuant to Local Rule 7-3, which took place on July 23, 2026.  A statement of compliance with Local Rule 7-3 is attached.

Undersigned counsel hereby notifies the Court that this notice of motion, supporting memorandum, exhibits, meet and confer statement, and proposed order were served on the following individuals:

Vikas.Didwania@ilag.gov

chelsey.metcalf@cityofchicago.org

paul.berks@ilag.gov

Henry.Shreffler@mto.com

Sara.Worth@mto.com

Dated: July 1, 202

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

BRANTLEY T. MAYERS
Counsel to the Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Branch Director

/s/ *C. Lee Reeves, II*
C. LEE REEVES, II
Trial Attorney
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Telephone: (202) 616-0773
E-mail: Lee.Reeves2@usdoj.gov

*Attorneys for the United States*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

BRANTLEY T. MAYERS
Counsel to the Assistant Attorney General
Civil Division

ANDREW I. WARDEN
C. LEE REEVES, II
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Telephone: (202) 616-0773
E-mail: Lee.Reeves2@usdoj.gov

JONATHAN A. ROBBINS
Civil Division, Office of Immigration Litigation
450 5th Street NW
Washington DC 20044
(202) 305-8275
Jonathan.A.Robbins@usdoj.gov

*Attorneys for the United States*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re Subpoena to Coalition for Humane Immigrant Rights (CHIRLA)**<br><br>Served in the United States District Court for the Northern District of Illinois (Case No. 26-cv-321)<br><br>STATE OF ILLINOIS *et al.*,<br>Plaintiff, | No. XXXX<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH SUBPOENA ISSUED BY THE STATE OF ILLINOIS AND THE CITY OF CHICAGO TO COALITION FOR HUMANE IMMIGRANT RIGHTS** |

v.

DEPARTMENT OF HOMELAND SECURITY, *et al.*,

Defendants.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 26(c) and 45(d)(3)(A), the United States respectfully requests that this Court issue a protective order and order quashing Requests for Production Nos. 1-3 of the subpoena issued to Coalition for Humane Immigrant Rights (CHIR) by the State of Illinois and the City of Chicago. As explained in greater detail below, the subpoena requires a private party (CHIR) to disclose U.S. government documents that were produced by the government during discovery in *Vasquez Perdomo v. DHS*, 25-cv-05605 (C.D. Cal.). These government documents were provided in connection with claims about immigration enforcement efforts in the greater Los Angeles area—materials and events which have little to no relevance to the separate, unrelated immigration enforcement efforts in the Northern District of Illinois.

Additionally, the overbroad subpoena imposes an undue burden on the federal government. A substantial portion of the voluminous discovery in *Vasquez Perdomo* was produced in unredacted form notwithstanding various ongoing privilege disputes, and the parties there agreed to a clawback procedure allowing for the return of those documents should the *Perdomo* defendants prevail in their privilege assertions. This compromise—a necessity borne of litigation expediency—has to this point adequately reconciled the parties' interests given the clawback agreement between the *Perdomo* parties. But this negotiated balancing of the equities will fall apart when a third-party—here, the *Illinois* plaintiffs—seek those same unredacted documents from the *Perdomo* Plaintiffs. Not only are the *Illinois* plaintiffs not subject to the clawback agreement, but the unredacted nature of the documents means that the *Perdomo* defendants will now have to conduct the same unduly burdensome privilege review and redaction process that the clawback agreement sought to avoid, lest the privileges be waived. Although the issuing Court in *Illinois* expressly did not authorize the *Illinois* plaintiffs to seek materials from the *Perdomo* case that are subject to a claim of privilege, this carve-out does not lessen or

obviate the burden on the *Perdomo* defendants to identify and redact such material on pain of waiving applicable privileges. Accordingly, this Court should issue a protective order and quash Requests for Production #1-3 of the subpoena issued to CHIR by the State of Illinois and the City of Chicago.

## II. FACTUAL BACKGROUND

### *A. Illinois v. DHS* (N.D. Ill.)

The subpoena at issue in this matter arises from a civil action brought by the State of Illinois and the City of Chicago ("*Illinois*" or "*Illinois* plaintiffs") against the Department of Homeland Security, its subcomponents, and various senior officials in their official capacities ("DHS"). *See State of Illinois et al. v. Department of Homeland Security et al.*, Case No. 26-cv-321 (N.D. Ill.).

In September 2025, DHS launched Operation Midway Blitz to address the dangers arising from the presence of illegal aliens in the Chicago area, including members of gangs who have engaged in violent crimes and drug trafficking. Illinois and Chicago have sanctuary laws and policies that limit the cooperation of state and local officials with federal immigration officials, which has hindered the federal government's ability to enforce immigration laws in Illinois and Chicago, and has exacerbated the dangers posed by certain illegal aliens. Operation Midway Blitz led to the successful arrest and subsequent deportation of illegal aliens including murderers, child abusers, kidnappers, gang members, and armed robbers. In late 2025, the surge of DHS personnel deployed to the Chicago area demobilized and Operation Midway Blitz ended.

On January 12, 2026, Illinois filed suit challenging all aspects of DHS's immigration enforcement operations within the greater Chicago area during Operation Midway Blitz. *See Illinois*, Compl. Dkt 1. The Complaint spans over 100 pages and contains 19 constitutional and statutory claims for relief. *See id.* Count 1 alleges that DHS's immigration enforcement actions in Illinois violate the Tenth Amendment of the United States Constitution (Compl. ¶¶ 316-34). Count 2 alleges that the U.S. Customs and Border Protection's (CBP) operations in Illinois exceed its authority, which Plaintiffs

claim is confined to areas near the nation's border (Compl. ¶¶ 335-44). Claims 3-17 allege various violations of the Administrative Procedure Act (APA), 5 U.S.C. § 706. These 15 claims collectively challenge seven purported immigration enforcement-related practices or policies: (i) roving patrols (Counts 3 & 4) (*id.* at ¶¶ 345-59); (ii) biometric scanning (Counts 5 & 6) (*id.* at ¶¶ 360-76); (iii) warrantless arrests (Counts 7 & 8) (*id.* at ¶¶ 377-89); (iv) tear gas (Counts 9 & 10) (*id.* at ¶¶ 390-404); (v) enforcement operations "at or near sensitive locations," including courthouses (Counts 11 & 12) (*id.* at ¶¶ 405-18); (vi) concealing of license plates on motor vehicles used by Defendants in immigration enforcement operations (Counts 13 & 14) (*id.* at ¶¶ 419-32); and (vii) unlawfully trespassing on private property in connection with immigration-related enforcement operations (Counts 15-17) (*id.* at ¶¶ 433-53). Counts 18 and 19 are catch-all claims seeking injunctive and declaratory relief, respectively, against the alleged policies noted above. (*id.* at ¶¶ 454-64).

At the February 19, 2026 hearing, in response to Plaintiffs' request to serve early discovery in *Illinois*, the Court noted that discovery was unnecessary at that time because "things [were] quiet" and because "it's a lot more efficient" to await the outcome of Defendants' motion to dismiss. Dkt 55-1, Tr. 11. By motion dated April 15, 2026, Plaintiffs effectively sought reconsideration of the Court's discovery denial, filing a "Motion to Clarify the Scope of Discovery," which Defendants opposed by filing dated April 21, 2026.

The Court authorized Illinois to serve third-party subpoenas on the plaintiffs in *Perdomo*, subject to certain express limitations. As relevant here, the Court explicitly declined to authorize subpoenas for any materials over which there is an ongoing privilege dispute or for which the United States claims are subject to law enforcement or other privilege. April 23, 2026 Hearing Tr. 18:10 – 19:22 (attached as Exhibit 1).

**B. *Vasquez Perdomo v. Mullin* (C.D. Cal.)**

On June 20, 2025, three aliens arrested in the Los Angeles area filed a habeas petition seeking release from immigration detention. The plaintiffs, all day laborers, had

been arrested in Pasadena, California on June 18 during a "targeted enforcement action at a doughnut shop" where surveillance and intelligence indicated that the target and his associates were recruiting unauthorized workers for landscaping jobs. At least two of the three Plaintiffs had attempted to escape arrest by running from officers. All three were later released and are no longer in government custody. *See Vasquez Perdomo*, 25-cv-05605, Dkt 146 at 1.

On July 2, 2025, the plaintiffs filed an amended class-action complaint seeking to enjoin the government's alleged "ongoing pattern and practice" of unlawful stops and arrests specifically "in connection with ongoing immigration raids in the Los Angeles area." *Id.* Dkt 16 ¶ 1. On July 11, 2025, the district court granted the plaintiffs' motion for a temporary restraining order ("TRO"), enjoining all investigative stops based on four enumerated factors alone or in combination: race, language, location, or occupation. *See id.* Dkt 87. Defendants appealed and sought stays before the district court and Ninth Circuit; both motions were denied. *Id.* Dkt 89, 94, 108, 109.

On September 8, 2025, the Supreme Court stayed the Fourth Amendment TRO pending appeal. *See Noem v. Perdomo*, 146 S. Ct. 1 (2025). Largely adopting the government's arguments against standing and finding they would likely succeed on the merits, Justice Kavanaugh issued a comprehensive concurring opinion, finding that the Government made a sufficient showing to obtain a stay pending appellate review and emphasized the significance of the Government's interests in immigration enforcement, while highlighting the need of the Judiciary to not "improperly restrict reasonable Executive Branch enforcement of the immigration laws." *See id.* at *5 (Kavanaugh, J., concurring).

On October 17, 2025, after having dissolved the stayed TRO, the district court granted the plaintiffs limited, expedited discovery in support of their forthcoming motion for a preliminary injunction. *Vasquez Perdomo*, 25-cv-05605, Dkt 223. Over the span of several months, the government has produced an array of materials pertinent to Los Angeles targeted operations as part of Operation at Large – Los Angeles, with a particular

temporal focus on 15 operations between June and September 2025. Despite the tens of thousands of documents produced in limited discovery, the government was subject to several orders compelling additional discovery related to these 15 operations, including reproductions of previously redacted documents where the government asserted privilege, *id.* Dkts 338 (attorney-client and work product privileges), 365 (law enforcement privilege), as well as intrusive forensic imaging of present agents' government *and personal* phones, *id.* Dkt. 370. The government timely objected to all three orders, which remain pending before the district judge, *id.* Dkts 380, 391, 395.

Given the parties' mutual understanding that discovery had to proceed, the government agreed to reproduce and continue producing documents without redacting for privilege, subject to clawback should the government prevail on their objections before the district judge. Various documents produced in discovery would potentially be subject to clawback should the district judge conclude that the government properly asserted its privileges.

*Perdomo* defendants have received four expansive sets of requests for production—which has resulted in 28,482 pages produced thus far. Discovery produced to date is inclusive of (1) communications about Los Angeles operations such as agents' emails, text messages, WhatsApp messages, Zello radio chats; (2) standardized documentation of targeted operations in Los Angeles, such as Form I-213s (Record of Deportable/Inadmissible Alien), target sheets, narratives of arrest, end of shift summaries; (3) training materials and documentation; and (4) videos produced from Operation at Large Los Angeles agents' body worn cameras and SUAS drones surveilling areas within Los Angeles ahead of targeted operations. As detailed above, the discovery produced in *Vasquez Perdomo* is further complicated by the fact that these categories of production are currently subject to three independent objections currently before the district court as to privilege and scope. This discovery is also complicated by the fact that various documents the government has produced to the *Perdomo* plaintiffs may be subject to the parties' clawback agreement in the event that the government prevails on their pending objections.

If they prevail, the government would be entitled to clawback all unredacted documents to be reproduced with the properly asserted privilege.

Additionally, Defendants have been expending enormous effort and resources to comply with the district court's order expanding the scope of limited, expedited discovery, *Vasquez Perdomo*, 25-cv-05605, Dkt 370—which requires, among other things, the forensic imaging of any and all phones used by agents present at the fifteen operations in Los Angeles (including officers temporarily deployed from other duty stations across the nation to support the government's lawful immigration enforcement operation). Given the scope and pace of expedited discovery, the government has also had to hire contractors and pull a multitude of other Justice Department attorneys off other important national litigation to assist with this large-scale review in limited discovery.

**C. *Illinois* Subpoena**

By subpoena dated May 14, 2026, the *Illinois* plaintiffs sought from the *Perdomo* plaintiffs any and all documents and materials produced by the *Perdomo* defendants related to roving patrols, warrantless arrests, and immigration-related enforcement efforts at sensitive locations. *See* Exhibit 2. They seek the following:

> 1. All training or guidance provided to agency personnel related to roving patrols, warrantless arrests, and actions at sensitive locations on topics including but not limited to: the difference between a consensual encounter and a seizure; the factors that may be considered in deciding whether to initiate a consensual encounter or arrest including a vehicle stop; appropriate use of force; other considerations for initiating and conducting a roving patrol, warrantless arrest, or action at a sensitive location; and documentation requirements for roving patrols, warrantless arrests, and actions at sensitive locations;
>
> 2. All documents relating to the conduct of operations between June and August, 2026, including Field Operations Worksheets, targeting sheets, operations plans, pre-operations briefings, intelligence reports, targeting

packages, notes, videos (including body camera footage), Administrative Warrants, Form I-213s, database entries, post-operation briefings, after-action reports, other communications describing or characterizing the operations, documents reflecting review of the operations, and documents reflecting any arrest quotas;

3. Communications through messaging of any kind (including text messaging, chats, or messaging through a mobile application) between or including any *Vasquez Perdomo* Defendants or agency personnel concerning roving patrols, warrantless arrests, or actions at sensitive locations;

4. The *Vasquez Perdomo* Defendants' response to, and all documents referenced, reviewed, or relied upon by the *Vasquez Perdomo* Defendants in responding to, CHIRLA's Expedited Interrogatories to Defendant Noem, Set One, No. 4, Dkt. 211-1; and

5. All documents filed with the Court as attachments or evidence in support of any motion, response, or other filing by the *Vasquez Perdomo* Defendants.[1]

The subpoena seeks compliance in the Central District of California. Accordingly, the United States brings this motion in this Court. *See* Fed. R. Civ. P. 45(d)(3)(A).

## III. ARGUMENT

### A. The United States Has Standing to Quash a Subpoena Seeking Government Documents in Possession of a Private Party.

A third party to a subpoena, has standing to quash a subpoena "if [the subpoena]

[1] The United States seeks to quash largely for Requests for Production (RFP) 1-3. The parties have reached a mutually acceptable resolution as to RFP's 4 & 5 with the exception of a single document that is the subject of a pending motion to seal (*Vasquez Perdomo*, 25-cv-05605, Dkt. 529-21 (Exhibit 15).

infringes on their legitimate interests." *United States v. Raineri,* 670 F.2d 702, 712 (7th Cir. 1982) (citing *United States v. Segal*, 276 F. Supp. 2d 896, 900 (N.D. Ill. 2003)). It is axiomatic that the Government has a legitimate interest in "safeguarding its investigative files from unwarranted disclosure." *Ayash v. United States*, 352 F.2d 1009, 1012 (10th Cir. 1965). Here, where the *Illinois* plaintiffs seek the disclosure of U.S. government documents in the possession of a private party, the federal government has the requisite "personal right or privilege with regard to the documents sought." *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 973 (C.D. Cal. 2010).

B. <u>Insofar as the Subpoena Seeks Materials that are Subject to a Claim of Privilege, the Request Exceeds the Authorization of the Issuing Court.</u>

As noted, in authorizing the subpoena in issue here, the *Illinois* Court explicitly declined to permit the *Illinois* plaintiffs to obtain from the *Perdomo* parties any materials over which there is an ongoing privilege dispute or for which the United States claims are subject to law enforcement or other privilege. April 23, 2026 Hearing Tr. 18:10 – 19:22. Accordingly, to the extent materials responsive to the subpoena are subject to a claim of privilege in *Perdomo*, this Court need not engage in a relevance or undue burden analysis because the fact of an extant privilege assertion necessarily ends the production analysis.

C. <u>The Subpoena Seeks Irrelevant Documents and is *Per Se* Unduly Burdensome.</u>

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, a court is required to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(iii-iv). Similarly, Rule 26(c) authorizes the Court "to issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery" and "(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1).

"Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005). A subpoena that seeks information irrelevant to the case is a *per se* undue burden. *See Wheel Grp. Holdings, LLC v. Cub Elecparts, Inc.*, No. CV 17-5956-JVS-PLAX, 2018 WL 6264980, at *4 (C.D. Cal. Sept. 4, 2018) (reasoning that a Rule 45 subpoena must be quashed if it seeks irrelevant information because Rule 45 allows the same scope of discovery as Rule 26, Rule 45 requires a subpoena be quashed if it subjects a person to an undue burden, and "discovery requests seeking irrelevant information are inherently undue and burdensome"); *Duong v. Groundhog Enterprises, Inc.*, No. 219CV01333DMGMAA, 2020 WL 2041939, at *5 (C.D. Cal. Feb. 28, 2020) (finding subpoena imposed undue burden where it sought irrelevant documents); *see also Cook v. Howard*, 484 Fed. Appx. 805, 812 n.7 (4th Cir. 2012) (explaining that "undue burden" in Rule 45 "encompasses situations where the subpoena seeks information irrelevant to the case or that would require a non-party to incur excessive expenditure of time or money"); *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020) ("a subpoena issued under Rule 45 should be quashed to the extent it seeks irrelevant information"). Relevant information need not be admissible at trial, but it must at the very least appear to be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see also Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). That is simply not the case here.

The *Perdomo* discovery pertains to immigration-enforcement efforts in the Los Angeles metro area, not Chicago. As explained above, the discovery produced in *Perdomo* generally consists of (1) communications about Los Angeles operations such as agents' emails, text messages, WhatsApp messages, Zello radio chats; (2) reports of targeted enforcement operations in Los Angeles, such as Form I-213s (Record of Deportable/Inadmissible Alien), target sheets, narratives of arrest, end of shift summaries; (3) training materials and documentation; and (4) videos produced from

Operation at Large Los Angeles agents' body worn cameras and surveillance drone videos within Los Angeles ahead of targeted operations. This discovery has no conceivable nexus to immigration-enforcement efforts in the Northern District of Illinois. For example, any "notes, videos (including body camera footage), [or] Administrative Warrants" attendant to immigration-enforcement operations in Los Angeles shed no probative value as to the validity of the *Illinois* plaintiffs' claims arising out of wholly separate immigration-enforcement operations in the greater Chicago area. Further, much of the discovery in *Perdomo* relates to targeted operations as part of Operation at Large – Los Angeles that occurred between June and September 2025, before Operation Midway Blitz began in Chicago. Put simply, an arrest report or body camera video of an arrest in Los Angeles in July 2025 has no relevance to Illinois's argument that the federal government violated the 10th Amendment or the APA by conducting immigration enforcement operations several months later in Chicago.[2]

D. <u>The Subpoena Would Cause an Undue Burden for the *Perdomo* Litigation</u>

Rule 45(d)(3)(iv) requires a court to quash or modify a subpoena that subjects a person to an undue burden. In determining whether a burdensome subpoena is reasonable, this Court should balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it, according to the facts of the case. *See Federal Procedure, Lawyers Edition*, § 65:257 (citing *Linder v. Department of Defense*, 133 F.3d 17 (D.C. Cir. 1998); *E.E.O.C. v. Texas Roadhouse, Inc.*, 303 F.R.D. 1 (D. Mass. 2014); *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1 (D.D.C. 2009); *American Elec. Power Co., Inc. v. U.S.*, 191 F.R.D. 132 (S.D. Ohio 1999)).

[2] To the extent the training materials and documentation could be related to immigration matters outside Los Angeles, that material is currently the subject of a dispute over attorney/client privilege and work product privilege, over which the *Perdomo* Court has not yet ruled.

Factors commonly considered in determining whether a subpoena presents an undue burden include the (1) relevance of the information requested, (2) need of the party for the information, and (3) burden imposed. *Federal Procedure, Lawyers Edition*, § 65:257 (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812 (5th Cir. 2004); *North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49 (D.D.C. 2005); *In re Automotive Refinishing Paint*, 229 F.R.D. 482 (E.D. Pa. 2005); *Travelers Indem. Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111 (D. Conn. 2005); *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658 (D. Kan. 2003); *American Elec. Power Co., Inc. v. U.S.*, 191 F.R.D. 132 (S.D. Ohio 1999)).

Complying with the third-party subpoena will effectively grind *Perdomo*'s plenary discovery, and all other litigation activity in that case, to a screeching halt. The discovery reproduction process would not be straight-forward, nor simple, and would further complicate the government's ability to attend to its ongoing discovery obligations to the plaintiffs in that case. The significant burden of compliance with the third-party subpoena is summarized as follows.

First, the volume of discovery produced in *Perdomo* has been extensive. To date, Defendants have produced 28,482 pages of information, as well as substantial hours of video and audio files. The sheer volume of documents to review alone constitutes a substantial burden, in and of itself.

Second, in addition to needing to modify the protective order in place in *Perdomo*, compliance with these subpoenas will require the government to undertake an additional review process for privilege and confidentiality redactions, before any previous productions—which were unredacted under the terms of the parties' protective order and/or the parties' clawback agreement—would be sent to Plaintiffs in the *Illinois* case. Counsel for the defendants in *Perdomo* (as well as agency counsel) would need to divert from ongoing discovery review and productions to re-review at least 17,985 documents (and several hundred hours of video and audio) for the law enforcement privilege

("LEP").[3] The State of Illinois is mistaken in its belief that a third-party subpoena for our discovery productions would promote "efficiency." April 23, 2026 Hearing Tr. 4, at line 10. The burden involved in producing all this information would require other discovery tasks in *Perdomo* to be placed on hold while resources are diverted for several weeks for ongoing re-review of thousands of documents and hours of audio and video to apply redactions over any privilege, which would only deter ongoing discovery and mitigate efficiency in the *Perdomo* litigation. The privilege review process requires meticulous attention to detail, cannot be rushed, and, given the volume, will take a considerable amount of time. These concerns are only compounded by the very limited number of attorneys available to conduct this review and the inherent detail-oriented nature of the work. Even more time-consuming are the redaction of audio and video files, which would require further coordination with technical contractors, as it can take hours to redact a few minutes of (privileged or confidential) audio or video footage.

To make matters more complicated, the LEP invocation process requires an additional multi-step process to properly invoke the privilege, specifically: (1) a formal claim of privilege by the head of the department with control over the requested information; (2) assertion of privilege based on that official's actual personal consideration; and (3) a detailed specification of the information, and the basis, for which the privilege is claimed. *See Roman v. Wolf*, 2020 WL 6588399, at *2 (C.D. Cal. Jul. 16, 2020) (citing *Landry v. F.D.I.C.*, 204 F.3d 1125, 1135 (D.C. Cir. 2000)); *Conan v. City of Fontana*, 2017 WL 2874623, at *4 (C.D. Cal. Jul. 5, 2017). Courts in the relevant jurisdiction have routinely construed "head of the department" as "an appropriate agency official." *See United States v. City of Los Angeles*, 2023 WL 6370887, at *9 (C.D. Cal. August 28, 2023)). This process will necessarily take considerable time and must be

---

[3] LEP redactions were not made as part of the government's agreement with the *Perdomo* Plaintiffs concerning compliance with the magistrate's order (Dkt 365). Pages were simply notated as containing potential LEP for internal record keeping purposes and marked as attorneys' eyes only, Body-worn camera, sUAS footage, and audio files were produced in their entirety without redactions as well.

considered when evaluating the government's burden required to comply with *Illinois* Plaintiffs' subpoena. While invocation of the attorney-client and attorney work product privileges is not as burdensome as invocation of LEP, the review process is no less burdensome.

Third, in addition to ongoing objections as to attorney-client and work product privilege as well as scope, the defendants currently have objections pending before the district judge regarding its invocation of LEP. *Vasquez Perdomo*, 25-cv-05605, Dkts 380, 391, 395. In the event the government prevails as to any of these objections, the government would be entitled to claw back previously produced (unredacted) materials. Should the court enforce the subpoena, this claw back process would become a significant, unraveling logistical burden for the government, as it would have to work on multiple fronts—to claw back its privileged information from numerous sets of private litigants in both the *Perdomo* and *Illinois* case, who have differing rights to access these materials. For one thing, *Perdomo* Plaintiffs are subject to a protective order that prevents disclosure of documents designated as "Confidential Information." *Vasquez Perdomo*, 25-cv-05605, Dkt 247. The *Illinois* Plaintiffs would not be subject to that protective order and thus further redactions, beyond privilege, would need to be made before the government could produce the documents to the *Illinois* Plaintiffs. The fact that the magistrate judge in *Perdomo* did not agree with the government's privilege assertions in that case does not prevent the government from asserting the same privilege arguments in a different case. *See States v. Mendoza*, 464 U.S. 154 (1984) (holding that "nonmutual collateral estoppel cannot be used against the government"). The level of coordination and resources to conduct such a claw back amongst the various litigant groups involved in both *Perdomo* and *Illinois* would be extraordinary, and it would require a herculean effort, pulling Department attorneys and amassing hundreds of hours of review and redacting that the *Perdomo* litigation team simply cannot accommodate, when it already has ongoing discovery obligations as part of both limited, expedited discovery and the greater plenary discovery.

Moreover, such efforts would only draw resources away from the litany of other litigation responsibilities both in *Perdomo* and other litigation handled by the Office of Immigration Litigation. Measured against the mountain of discovery currently being collected, processed, reviewed, and produced in *Perdomo*, it would be tremendously burdensome for the government and would make it virtually impossible to comply with its current deadlines in that case. Contrary to Plaintiffs' allegations that this would be efficient, it would not be as simple as forwarding files. Time-consuming privilege and confidentiality review and redactions would divert from ongoing litigation and would actually mitigate efficiency across the board, including in the *Illinois* litigation as counsel of record for Defendants would also need to review for responsiveness and privilege. As evident from the review process in *Perdomo*, which has been in limited, expedited discovery for nearly eight months now, this process will be arduous and time consuming due to the level of painstaking review that is required.

At bottom, the process required for complying with the third-party subpoena will halt the *Perdomo* litigation due to the extraordinary undue burden it would impose. Counsel of record for *Perdomo* defendants are currently faced with a daunting list of outstanding discovery obligations between ongoing limited expedited discovery and, now, plenary discovery productions. There were only four requests for production in limited, expedited discovery but over 80 requests for production as to plenary discovery, in addition to defending numerous depositions and propounding their own affirmative discovery requests.  Even charitably assuming that the *Perdomo* discovery would provide some meager legal benefit to the *Illinois* plaintiffs in the litigation of their claims, the incremental burden to the *Perdomo* defendants of having additional, collateral third-party discovery obligations vastly outweighs any arguable benefit to the *Illinois* plaintiffs such information might bestow.

## IV. CONCLUSION

The United States asks that this Court issue a protective order and quash the

subpoena because the subpoena is unauthorized insofar as it seeks materials that are the subject of a claim of privilege, because the subpoena seeks irrelevant information, and because the process of re-reviewing thousands of pages and redacting privileged information would impose an undue burden on the *Perdomo* defendants.

Dated: July 1, 2026

Respectfully submitted,

By: /s/ C. Lee Reeves, II

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

BRANTLEY T. MAYERS
Counsel to the Assistant Attorney General
Civil Division

ANDREW I. WARDEN
C. LEE REEVES, II
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Telephone: (202) 616-0773
E-mail: Lee.Reeves2@usdoj.gov

JONATHAN A. ROBBINS
Civil Division, Office of Immigration Litigation
450 5th Street NW
Washington DC 20044
(202) 305-8275
Jonathan.A.Robbins@usdoj.gov

# Exhibit 1

*State of Illinois et al. v. Department of Homeland Security et al.*, Case No. 26-cv-321 (N.D. Ill.)

April 23, 2026 Hearing Transcript

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STATE OF ILLINOIS, a sovereign state; and the CITY OF CHICAGO, an Illinois municipal corporation,

Plaintiffs,

v.

DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, in his official capacity as Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement; SAMUEL OLSON, in his official capacity as Field Director for U.S. Immigration and Customs Enforcement; U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; U.S. BORDER PATROL; MICHAEL W. BANKS, in his official capacity as Chief of U.S. Border Patrol; and GREGORY BOVINO, in his official capacity as Senior Officer of the Department of Homeland Security and Illinois tactical commander,

Defendants.

Case No. 26 C 321

Chicago, Illinois
April 23, 2026
2:56 p.m.

TRANSCRIPT OF PROCEEDINGS - IN-COURT HEARING
BEFORE THE HONORABLE SARA L. ELLIS

APPEARANCES:

For the Plaintiff State of Illinois: OFFICE OF THE ILLINOIS ATTORNEY GENERAL
BY: MR. VIKAS K. DIDWANIA
MR. PAUL BERKS
115 S. LaSalle Street
Chicago, Illinois 60603

For the Plaintiff City of Chicago: CITY OF CHICAGO
BY: MS. CHELSEY B. METCALF
30 N. LaSalle Street, Suite 600
Chicago, Illinois 60602

For the Defendants: U.S. DEPARTMENT OF JUSTICE
BY: MR. ANDREW I. WARDEN (remote)
1100 L Street NW
Washington, DC 20005

Court Reporter: KELLY M. FITZGERALD, RPR, RMR, CRR
Official Court Reporter
219 S. Dearborn Street, Room 1412
Chicago, Illinois 60604
(312) 818-6626
kmftranscripts@gmail.com

* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court:)

THE CLERK: 26 C 321, State of Illinois, et al. v. Department of Homeland Security.

Will the parties please state their names for the record, starting with the State of Illinois.

MR. DIDWANIA: Good afternoon, Your Honor. Vikas Didwania on behalf of the State of Illinois.

MR. BERKS: Paul Berks also on behalf of the State of Illinois.

MS. METCALF: Good afternoon, Your Honor. Chelsey Metcalf for the City of Chicago.

THE COURT: And then Mr. Warden?

MR. WARDEN: Good afternoon, Your Honor. Andrew Warden from the Department of Justice on behalf of the federal defendants.

THE COURT: All right. Good afternoon.

And thanks, everybody, for your patience as we are working through the tech issues.

So I've got plaintiffs' motion to clarify the scope of the discovery stay and then defendants' response.

So in terms of the defendants' response, some of the things that they brought up were trying to deal with protective orders that were entered in other cases. They brought up in the *Perdomo* case that potentially the issue of law enforcement privilege might claw back discovery that's already been

produced to the plaintiffs in that case.

So what is the plaintiffs' kind of response to those things? And I guess I -- my initial thought is it might make sense to -- and sort of talk through what it is that you're looking for or why you're looking for this to the extent that, you know, you want to talk about it before July 30th when it's -- we're not that far away from July 30th.

I appreciate the idea of -- and I'm certainly open to the idea of using the discovery produced in other cases as an efficiency vehicle in that, you know, why do we have to reinvent the wheel sort of thing. So I do appreciate that approach, and I am interested in it. It's more the timing and then how do we sort of deal with these other issues.

MR. DIDWANIA: Sure, Your Honor. Let me start where you started with the protective order and then I'll talk about the timing.

On the protective order, you know, there's a protective order in, for example, the *Vasquez Perdomo* case in California, but it contemplates Rule 45 subpoenas. And that's paragraph 7 I think of the protective order.

And if there are certain specific issues that the defendants believe are raised by discovery in that case, for example, the law enforcement privilege, those are things that we can work out. There's no protective order in this case, and so that's one of our asks is that we -- we're going to -- we're

asking you, Judge, to set a deadline by which the parties can submit proposed protective orders --

THE COURT: Mm-hmm.

MR. DIDWANIA: -- or one if it's agreed.

But, you know, I anticipate that whatever we propose will include a clawback provision. It could include coverage for materials produced pursuant to Rule 45 subpoenas.

And so these seem like solvable problems that the parties can negotiate in the first instance; and if they're not, then of course we can bring them to you.

THE COURT: Mm-hmm.

MR. DIDWANIA: So I think those types of issues can be resolved.

In terms of timing, it's really an issue of this is, as you know, a large, complicated case, and you have expressed a desire, I think everyone has expressed a desire to move it along expeditiously. It's going to take time. You saw in the Headline Club case, Judge, there was quite a bit of discovery in a very short period. And here the defendants have talked about already having produced hundreds of thousands of pages in just those two cases. And so, you know, we're living in a world of limited resources, and so we just want to, one, get started getting that material, reviewing it.

And the second thing is, you know, at the last hearing, you -- you mentioned that the parties should come to

the July hearing ready to propose a discovery schedule. And so we think it will just make it so much simpler and easier if we have access to those records to be able to propose a workable schedule instead of going in blind. And so given that this material is already here, it will impose no burden on the defendants for us to be able to get them from the plaintiffs. It seemed like a good way to balance those different interests of not imposing burdens but also moving this case along, being able to propose a workable discovery schedule.

This is not a situation where we're like, well, this information will otherwise disappear or something like that, we need it today. That is not what we're suggesting. It's really a matter of efficiency and trying to get to resolution sooner rather than later.

THE COURT: And, Mr. Warden, what are -- what are your thoughts? And I certainly am sensitive to the issue, for example, in the *Perdomo* case, you know, where if the district court judge decides the law enforcement privilege applies and there's a clawback, you know, you don't want to be clawing back material in two cases as opposed to one, so I certainly understand that.

But I also think that it's worthwhile if there isn't a significant objection that it's not as if this is putting a burden really on the government if the plaintiffs are serving these subpoenas to get discovery that was already produced and

they're serving it on the plaintiffs in those cases, then, you know, it's really just allowing the plaintiffs here to start sorting through that discovery in order to determine what else they need from the government once we kind of shift, sort out all of the claims and see which claims are moving forward.

MR. WARDEN: Yes. Thanks, Judge.

I think going down this road, it would really enmesh this Court, the judges of the other courts. I'm not sure how many subpoenas plaintiffs plan to -- to issue here and just a host of collateral litigation and issues that we really can't even begin to I think contemplate at this point.

You know, they will serve the subpoenas presumably on the plaintiffs. There will then be likely a series of motions to quash that will then be filed around the country. Those judges, what I think had the option to transfer all of that back to this court and then we'll have a series of collateral litigations over, you know, those subpoena matters about whether these documents are privileged. The government would certainly be entitled to assert privilege claims notwithstanding decisions in other cases.

There's certainly a big relevance question here in our mind about why, for example, body cameras from arrests in Los Angeles or Portland has any relevance to what's happening here in this case. And so producing all of that does create a burden on the government.

As Your Honor pointed out, there is -- the motion to dismiss is nearly teed up for -- for a resolution. I don't think any sort of delay here is prejudicial to the plaintiffs, particularly given that most of the claims are brought under the Administrative Procedure Act where it's brought -- decided on an administrative record not a free-flowing discovery situation.

And so I think that there will just be a -- a -- a host of disorder and disruption to other courts, to the parties here, to the private plaintiffs who are going to have to be dealing with, you know, the collateral fallout from this when I think the more straightforward way is to await the decision on the motion to dismiss.

If the plaintiffs here think they need clone discovery from Portland or Los Angeles, then they can ask for that in the context of this case once we know what claims are going forward. They can explain why that's relevant to this particular case, and we can decide that and litigate it and Your Honor can decide whether that's necessary or not. But we think that's a far more straightforward path than going down this sort of convoluted road that we think the plaintiffs have proposed here.

THE COURT: What about the issue of relevance? And I guess a preliminary question is how many subpoenas would you anticipate issuing?

MR. DIDWANIA: So so far, Your Honor, we've identified those two cases that we listed in our motion because they contain relevant similar facts and similar legal claims, and we know that discovery has been produced in those cases. There are a series of other cases that have been filed around the country against ICE and CBP, some of which I think are quite different and some of them are relevant, but we don't know whether discovery has been produced.

So right now, all I can say, those two subpoenas, and I'm not sure as we continue obviously our -- our fact-gathering we might identify other cases where relevant discovery has been produced.

But just to step back for a moment, Judge, I think we should let the subpoenas issue, and we shouldn't presume that our subpoenas will be improper or, you know, beyond the scope.

THE COURT: Oh, no, I'm not.

MR. DIDWANIA: And so, you know, we're going to do our best to make sure our subpoenas only request information that's relevant to the case, and of course defendants will have a chance to object to that if they need to. But I think I hope it goes without saying that I think they will be in the nature and scope tailored to what we need in our case. But so far those are the two cases that we've identified.

THE COURT: Okay. So then I guess what I would like you to do first, where are you in terms of a protective order

here? Have you talked about it, exchanged drafts?

MR. DIDWANIA: So we exchanged one set of draft, Judge, and then there's been no further discussions.

And that's not to blame either party.

THE COURT: Mm-hmm.

MR. DIDWANIA: Parties have been, you know, basically with the motion to dismiss briefing. But I think it needs to be resolved.

THE COURT: Okay.

MR. DIDWANIA: So we would propose 30 days, Judge.

THE COURT: Okay. So why don't we kind of take this step by step and break it down because first, you need a protective order here. We've been sort of operating in a quasi protective order sort of land with the Chicago Headline protective order, but I think we need our own one for here.

So, Mr. Warden, does it make sense timing-wise to -- can -- is it reasonable to try to get something that either you can agree to or at least you've isolated what the problems are so I can decide in 30 days?

MR. WARDEN: Yes, Judge. I think -- well, we've got our reply due. I think, you know, if we could have until the end of May to -- to work on that. I -- I think the goal would be, you know, to have a protective order in place in the event the claims survive the motion to dismiss. I mean, I think we would object to the extent the purpose of the protective order

is to sort of, again, facilitate these third-party subpoenas.

THE COURT: No, it's not necessarily to facilitate the third-party subpoenas, but I don't -- you know, obviously we're not done with the briefing on the motion to dismiss. So I'm not giving any advisory ruling, right? I haven't waded through any of it.

But I would suspect that something is going to survive, right, the motion to dismiss? That's generally how these things go in these cases. So --

MR. WARDEN: Yes. I think what we had envisioned on the protective order was that we would work with the plaintiff. I agree with my friend that we had exchanged some drafts.

But I think from the government's perspective, given that the Court had set a decision for July and the motion to dismiss was ongoing, it wasn't a high priority item for us, but it was something that we were planning to tend to the extent we could tee up any disputes for Your Honor so that it would be decided in or around the same time as the motion to dismiss. So that was kind of our thinking, at least in terms of timing.

THE COURT: Okay. So then what I'd like you to do is I will set a status date for May 28th at 2:30. And if you can get me -- let's see. Yeah, because the defendants' reply is due by May 8th. So if I set it for May 28th and if you can get me by May 26th a -- basically a status report outlining where you're in agreement on the confidentiality order and then what

issues you need me to rule on, if you can get that to me by the 26th. And then on the 28th, we'll get the issues sorted out on the confidentiality order and get that in place.

And as for the subpoenas, what's the status in the *Perdomo* case, do you know, Mr. Warden, in terms of whether the district court has ruled on the privilege issue or has heard argument or anything?

MR. WARDEN: I don't believe there's been a ruling. Discovery is ongoing. As you may be aware, that matter went to the Supreme Court on an emergency stay motion which the Supreme Court granted and then it's now back in the district court moving through the sort of regular litigation process. So that issue of the law enforcement and privilege I believe has been briefed but has not been decided.

But in the interim, there had been an accommodation to provide that material subject to a clawback should the district court judge decide the matter differently than a magistrate judge.

THE COURT: Okay. So it's just kind of hanging out into the ether, is that sort of where we're at at this point?

MR. WARDEN: Yeah, I believe it's on the -- waiting -- waiting for a decision from the -- from the district judge is my -- my understanding, at least that privilege issue. But I don't have the discovery schedule in front of me as to where the case is going, but it's moving forward on the merits post

the Supreme Court's stay of the -- of the injunction.

THE COURT: Okay. Go ahead.

MR. DIDWANIA: So unsurprisingly, Judge, we would like to move on a dual track here while we negotiate the protective order. And, you know, we would agree not to receive any of the documents pursuant to our subpoenas until the protective order is in place.

But the thing that I worry about is, you know, when we issue the subpoenas, I suspect there might be litigation, you know, the defendants will raise. And so if we could just, like, try to resolve those issues while doing the protective order, you know, we can try to resolve all these issues instead of doing it one after the other, in which case we're going to sort of run off the clock.

THE COURT: Yeah. The reason I was asking --

MR. WARDEN: Judge, may I --

THE COURT: -- about the *Perdomo* case is that I don't have as much of a concern about the *Castañon Nava* case, right, as I do about the *Perdomo* case if there's this sort of outstanding issue of privilege that's hanging out there.

MR. DIDWANIA: We could also extract the documents that are subject to the privilege. I mean, I don't know if it's all the documents that they're asserting privilege over or some fraction of them. So while that issue is decided, the plaintiffs could continue to produce -- the plaintiffs could

produce the other documents to us.

THE COURT: Is that the biggest issue with that case, Mr. Warden, is the privilege issue?

MR. WARDEN: Well --

THE COURT: I mean --

MR. WARDEN: -- I think it --

THE COURT: -- in terms of, you know, the biggest area where the government would have an objection.

MR. WARDEN: Yes, that's a significant one. I think -- as I said more broadly, I think we would have to go through these documents to, again, assess both relevance and, you know, other sort of matters of privilege.

And I think we just fundamentally have a problem with the idea that plaintiffs are sort of going to be responsible for turning over government documents that we have turned over pursuant to court orders rather than the federal government turning them over directly to the parties here through this litigation.

If I could be heard on the timing point. Again, I do think that the timing matters here. The subpoenas will be served. We will likely have to go through litigation in the Central District of California and other courts. I mean, by the time those matters come up on those judges' calendars, we will probably be past July and in front of Your Honor again. So it's just to I think -- I think expend a lot of time and

resources, both from the parties and the federal judiciary to just basically be back here again deciding whether this discovery is relevant to this case and how much of it, if any, should be produced. And I think sort of sending us on that kind of frolic and detour for the next two months is really an inefficient way to go about it.

THE COURT: Well, sort of, right, but sort of not in that I would anticipate that if claims survive the motion to dismiss that plaintiffs would be essentially asking for this same discovery anyway, correct?

MR. DIDWANIA: That is correct, Your Honor.

THE COURT: So, you know, it's like do I have some of these fights now or do I have some of these fights in August. If I'm going to have to deal with fights, it's, you know --

MR. WARDEN: Well, I think the fight first will be in front of other judges who will have to decide whether they want to handle a matter of whether a private plaintiff should turn over government documents to the State of Illinois that's relevant to this case and whether that judge wants to hear that matter or decide to transfer it back to Your Honor will be I think one question that's at issue.

And then there will be collateral miscellaneous actions presumably will be related to this case, and, again, I think we'll just be back here again dealing with the same questions that we're confronted with now. And I think it just

makes far more sense to wait a few months to decide the motion to dismiss and then deal with all of these issues in the context of this case before Your Honor with an appropriate case management schedule when we know what the claims are that -- that move forward.

MR. DIDWANIA: I would just say my sense is that those issues are going to be disputed and decided in this courtroom. The subpoenas are being issued under this Court's authority, and to the extent that the defendants are seeking to quash or modify those subpoenas, they would do so in front of Your Honor given that it was issued under this Court's authority.

So I agree with you, Judge, that these disputes will come to you whether in May, June, July, August, or September.

MR. WARDEN: I would -- I disagree with that. I think Rule 45 is very clear that subpoenas issued out of this court, the place of performance would be the place where the plaintiffs reside. That would be Los Angeles or Portland or Minnesota, and that's where subpoena action begins.

THE COURT: Right.

MR. WARDEN: Rule 45(f) allows for transfer --

THE COURT: But I guess --

MR. WARDEN: -- so it would be other judges that would --

THE COURT: No, but -- not to cut you off, Mr. Warden, but that's -- you know, so if I understand the plaintiffs

correctly, they have identified two cases, so one in California, one here. So that's what I would limit the subpoenas to at this point. And so I would not allow the plaintiffs to basically, you know, identify every case that is raising similar issues that has been filed across the country and then started issuing subpoenas, right? So it's more to allow them to get their ducks in a row and, you know, obviously the subpoenas would have to be relevant to the claims raised here.

But if I'm limiting it to two cases, one of the cases is in this district, I think that will relieve some of the burden that you're describing. That is a valid issue to raise. But it's, you know, now we're talking about one judge in California who may or may not transfer the issue back to me.

I would want, though, you know, if we're going to -- first of all, the compliance with the subpoena shouldn't occur until we've got a protective order in place here.

With the Los Angeles case, I would want the subpoena to exclude any documents over which the government is asserting a law enforcement privilege because I just don't want to wade into that mess right now. I think the judge there can decide on whether the privilege applies, and I just don't want to get into having to claw back documents that have been produced. If we need them, we can -- you know, you can ask for those directly from the government, and we can deal with the law

enforcement privilege because I'm sure that's going to come up here anyway with other documents that you're going to ask the government to produce. So it would have to specifically exclude those documents.

MR. WARDEN: Well, I --

THE COURT: Go --

MR. WARDEN: Just so --

THE COURT: Go ahead, Mr. Warden.

MR. WARDEN: -- Your Honor, to clarify that.

Yes. I think on that, I think I would ask that that carveout be a bit broader to include any documents over which there are privilege claims that are subject to ongoing litigation. You know, again, I don't know the full extent of objections and privilege logs and the status of things in those cases. But, again, to the extent we have asserted a privilege over something in the litigation that's subject to a valid claim that may yet be adjudicated, I think we shouldn't I think enmesh ourselves.

So I just ask that it be broader than just law enforcement privilege but anything over which there are, you know, sort of pending privilege claims. You know, to the extent, you know, there are documents that are sort of free and clear that have been produced, you know, that would be one thing. But I think things for which there are sort of valid privilege claims that may need to be sorted out I think would

raise far more complications again at this stage.

THE COURT: And are you aware of anything beyond the law enforcement privilege at this time?

MR. WARDEN: I do not. I have not gone through the -- you know, again, the -- there's a fairly voluminous amount of discovery so I have not gone through, you know, all of it in that -- that case, but that's I think something we'll probably have to do potentially here.

And to be clear, the government would reserve all of its rights to oppose any subpoena in those other courts based on relevance, privilege, scope, burden. And, you know, we would -- we would reserve all of our rights to oppose as -- as appropriate.

THE COURT: Yeah, that's -- I understand that, and you're not waiving any of that.

And is that amenable to the plaintiffs?

MR. DIDWANIA: That seems fair, Judge. As I understand it, the subpoena of course cannot require the production of privileged documents.

And then two, to the extent that there's ongoing litigation over the privilege, we will not seek those documents. That's fine, Judge.

THE COURT: Okay. All right. So I think we have a good understanding there.

So we'll limit it to these two cases to begin with

and then under those constraints and that nothing will be produced until we have a protective order in place here. And the government obviously is free to make any objections to those subpoenas or quash those subpoenas on any basis that it thinks is appropriate.

Okay. All right. So then I'll see everybody on May 28th.

And, Mr. Warden, you can appear by video unless you feel compelled to come and experience springtime in Chicago.

MR. WARDEN: Sounds lovely, Judge, but thank you for the invitation.

There's one final housekeeping thing I was going to raise, if I may.

THE COURT: Sure.

MR. WARDEN: For our reply brief on May 8th, given the number of -- of claims we need to address, may we have an additional pages beyond the 15-page limit for our reply. We would ask for 30 pages if that's acceptable to Your Honor.

THE COURT: Sure.

MR. DIDWANIA: No objection here, Judge.

THE COURT: That's fine. That's fine.

Okay. Anything else we need to take up?

MR. DIDWANIA: Nothing else from plaintiffs.

THE COURT: Okay.

Anything else, Mr. Warden?

MR. WARDEN: Yeah. I guess only one just final thing I would just ask, and I assume my friend will do this, but obviously these subpoenas will be served on third parties, not the government, that we be copied on any service of those subpoenas so that we're aware of when they go out and so that we may communicate with the parties and instruct them appropriately.

MR. DIDWANIA: That's fine, Judge. Of course.

THE COURT: Yeah. And it's only going to the plaintiffs, correct, in both of those cases?

MR. DIDWANIA: That's correct.

THE COURT: Okay. Okay. All right. Thank you.

MR. DIDWANIA: Thank you, Judge.

THE CLERK: All rise. Court is adjourned.

(Concluded at 3:27 p.m.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/Kelly M. Fitzgerald* *May 28, 2026*
Kelly M. Fitzgerald, RPR, RMR, CRR
Official Court Reporter

# Exhibit 2

# Plaintiffs' May 14, 2026 Subpoena

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Illinois

State of Illinois, et al.
*Plaintiff*
v.
Department of Homeland Security, et al.
*Defendant*

Civil Action No. 26-CV-321

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Coalition for Humane Immigrant Rights (CHIRLA)

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: 350 S Grand Ave, 50th Floor, Los Angeles, CA 90071 | Date and Time: 06/04/2026 4:30 pm |
|---|---|

❐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 05/14/2026

*CLERK OF COURT*

OR

_________________________
*Signature of Clerk or Deputy Clerk*

/s/ Vikas Didwania
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* State of Illinois, who issues or requests this subpoena, are:

Vikas Didwania and Molly Petchenik, 115 S. LaSalle St., Chicago, IL 60603, vikas.didwania@ilag.gov, 312-814-3316

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 26-CV-321

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ____________ .

❒ I served the subpoena by delivering a copy to the named person as follows: ______________________
______________________________________________ on *(date)* ____________ ; or

❒ I returned the subpoena unexecuted because: ______________________
______________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ ____________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

Case 2:25-cv-05605-MEMF-SP Document 87-5 Filed 03/04/26 Page 4 of 146 Page ID #:14861


## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | No. 26-cv-321<br><br>Hon. Sara L. Ellis,<br>District Judge |

**SCHEDULE A TO SUBPOENA TO NON-PARTY COALITION FOR HUMANE IMMIGRANT RIGHTS**

Pursuant to Federal Rules of Civil Procedure Rules 26, 34, and 45, Plaintiffs State of Illinois and City of Chicago (Plaintiffs) hereby request that Coalition for Humane Immigrant Rights (CHIRLA) produce the following documents and tangible things at the office of the Illinois Attorney General, 115 S. LaSalle St., Chicago, Illinois, 60603, no later than twenty-one days from the service of this subpoena, unless otherwise agreed to by the parties or required by any scheduling order entered in this action. The Definitions and Instructions below are an integral part of the Request and must be read in conjunction with them and followed when responding to the Request.

**DEFINITIONS**

Plaintiffs incorporate by reference all instructions, definitions, and rules in the Federal Rules of Civil Procedure. Unless words or terms have been given a specific definition here, each word or term shall be given its usual and customary definition. The terms defined here should be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure. The following definitions apply to the Request:

A. The term the "Vasquez Perdomo Action" refers to *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP (C.D. Cal.).

B. The term "person" means any natural person or any business, legal, or governmental entity or association or any other cognizable entity, including, without limitation, corporations, and governmental agencies or instrumentalities.

C. The terms "you," "your," "Coalition for Humane Immigrant Rights," or "CHIRLA" refers to CHIRLA, a plaintiff in the Vasquez Perdomo Action, and includes any persons or entities acting for CHIRLA or its counsel.

D. The term "Vasquez Perdomo Defendants" refers to any or all current or former Defendants in the Vasquez Perdomo Action, and all their agents, employees, successors, representatives, attorneys, and any other person acting on their behalf.

E. The term "agency personnel" means any person employed by, or working at the direction of, an agency of the United States Government who is managed, directed, or overseen by any Vasquez Perdomo Defendant or who employs any Vasquez Perdomo Defendant, including officers, managers, employees, agents, attorneys (including outside counsel), representatives, contractors, staff, and other persons working for any such agency.

F. The term "roving patrol" means a civil immigration enforcement action that is not a targeted action against an individual identified through prior investigation.

G. The term "Administrative Warrant" refers to any non-judicial warrant issued for the arrest of an individual for a civil immigration violation, including any electronically stored equivalents. Administrative Warrant includes but is not limited to DHS Form I-200.

H. The terms "Notice to Appear" and "NTA" refer to administrative charging document DHS Form I-862, Notice to Appear.

Case 2:25-cv-05605-MEMF-SP Document 157-3 Filed 02/05/26 Page 7 of 14 Page ID #:14864

I. The term "warrantless arrest" means any arrest made by any agency personnel pursuant to 8 U.S.C. § 1357(a)(2), without or prior to the issuance of an Administrative Warrant or pursuant to an Administrative Warrant without an accompanying NTA.

J. The term "action at a sensitive location" means a civil immigration enforcement action at or near a school, courthouse, hospital, healthcare provider, shelter, or social service provider.

K. The term "training or guidance" means any documents, communications, or updates, either oral or written, to any agency personnel, including instructors' notes, for the purpose of informing or educating them on a subject.

L. "Communication" includes any oral or written transmission or disclosure of information in any form, including email, letter, memorandum, notes, telephone call, voicemail, text message, facsimile, social network post or message, Internet chat, electronic medium, or messaging application, and any document, in any form, that comprises, embodies, memorializes, reflects, or refers to any such transmission of information..

M. "Document" means the original and any non-identical copy of any recorded material in any form and however stored, produced, or reproduced, as broadly defined in Rule 34 of the Federal Rules of Civil Procedure, including papers of all kinds; communications; reports; letters; memoranda; directives; notes; messages; correspondence; announcements; contracts; agreements; leases; writings; drawings; graphs; charts; photographs; sound recordings; images; manuals; Internet files; articles; publications; website contents; audio files; data compilations; e-mail messages; voice mail messages; text messages, instant messaging messages (including Slack messages); chatroom messages; cloud-based documents and communications; marketing materials; training materials; computer

programs in source and object code; corporate minutes; e-mail attachments, social media postings, "likes," "shares," and messages (including photo and video files); videos, and material stored in any data or computer storage system, including all Electronically Stored Information (ESI); and any other writings, records, or tangible objects produced or reproduced mechanically, electrically, electronically, photographically, or chemically.

N. "Including" means "including, but not limited to," or "including, without limitation," and should not be construed as limiting any request.

O. "Relating to" shall be construed broadly and means, without limitation, addressing, analyzing, assessing, bearing on, commenting on, comprising, constituting, concerning, considering, containing, depicting, describing, discussing, embodying, evidencing, explaining, identifying, involving, pertaining to, referring to, reflecting, regarding, respecting, setting forth, stating, studying, supporting, or tending to support or refute, or referring or connected in any way, directly or indirectly, in whole or in part, to the subject of the inquiry.

**INSTRUCTIONS**

Plaintiffs incorporate by reference all instructions, definitions, and rules in the Federal Rules of Civil Procedure. For the purposes of this Request, the following instructions apply:

A. Unless otherwise specified, the Request encompasses documents and information in your possession, custody, or control or within the knowledge, possession, custody, or control of any person or entity acting on your behalf during the pendency of or period covered by the Vasquez Perdomo Action. This encompasses documents and information that existed during the pendency of the Vasquez Perdomo Action, even if they were created before the Vasquez Perdomo Action was initiated.

B. You must fully respond, search for, and produce all Documents and Communications responsive to the Request.

C. The following rules of construction shall apply to the Request:

   a. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa.

   b. All present tenses of verbs or verb forms shall be considered to include within their meaning the future and past tense so used, and vice versa.

   c. The words “or” and “and” are inclusive, referring to anyone or more of the disjoined words or phrases, and “any” and “all” also include “each” and “every.”

   d. Whenever the words, “all,” “any,” “each,” “every,” “includes,” “including,” “or,” “and,” “relating to,” “relates to,” and “related to,” are used in this Request, the word is to be broadly interpreted to bring within the scope of this Request any document or response that might otherwise be construed as outside its scope.

   e. The word “between” shall be construed as “between and/or among,” and is to be broadly interpreted to bring within the scope of this Request any document or response that might otherwise be construed as outside its scope.

D. All documents shall be produced in their original form and shall include all marginalia, attached notes, or other hand-written notations, as well as any attachments referred to or incorporated by the document. In lieu of providing the original of any document requested below, you may provide a clear and accurate photocopy of the document.

E. All Electronically Stored Information (ESI) is to be produced in the form in which it is ordinarily maintained (native format).

F. If a document cannot be produced in electronic format, it must be produced in hard copy,

paper format. If a document's original form was electronic, you must produce it electronically, preserving all information regarding the document (e.g., its creation and modification dates, its location within a storage device's file structure, etc.). All metadata must be preserved and produced with each electronic document.

G. Produce documents in the order in which they are maintained in the ordinary course of business, without shuffling or rearranging them. Fasten all hard copy, paper documents in the same manner as the originals, whether stapled, clipped, or otherwise fastened.

H. Mark each page of every document produced, whether by paper or electronically, with a consecutive number. Place the numbers at the lower right-hand corner of each page without obscuring any information on the document. If the documents produced bear a pre-existing numbering system, that system may be used provided that you identify the number range(s) being produced and any associated prefix or other part of the numbering system.

I. If any portion of a document is responsive to a request, produce the entire document.

J. If there are no documents responsive to a particular request, state so in writing.

K. In the event any Document is withheld on the basis of the attorney-client privilege, work product doctrine, or any other right to non-disclosure on any other basis, produce a Privilege Log in accordance with Federal Rules of Civil Procedure.

L. If you object to production in response to a specific request, state with particularity the basis for all objections with respect to such request. Respond to any and all portions of any request that do not fall within the scope of your objection.

M. If you, at any time, had possession or control of any document called for under a production request, and if such document has been lost, destroyed, or is not presently in your possession or control, you shall submit a written statement that: (a) describes in detail the

nature of the document and its contents; (b) identifies the person who prepared the document and its contents; (c) identifies all persons who have seen or had possession of the document; (d) specifies the dates on which the document was prepared, transmitted, or received; (e) specifies the date on which the document was lost, purged, separated, or destroyed, the conditions of and reasons for such purge, separation, or destruction from your possession or control, and the person(s) requesting and performing the purge, separation, or destruction; and (f) identifies all persons with knowledge of any portion of the contents of the document.

N. If, in responding to the Request, you encounter any ambiguity or confusion in construing a Request or a Definition or Instruction, set forth the matter deemed ambiguous, select a reasonable interpretation that you believe resolves the ambiguity, respond using that interpretation, and explain with particularity the construction or interpretation you selected.

O. Your obligation to produce documents and information in response to the Request is continuing. If you identify or locate any responsive documents or information at any time after your response is due, promptly produce it at the place specified in the Request.

P. Any alteration of a responsive document, including any marginal notes, handwritten notes, underlining, date stamps, received stamps, endorsed or filed stamps, drafts, revisions, modifications, and other versions of a document, is a responsive document in its own right and must be produced.

Q. In instances where two or more exact duplicates of any document exist, the most legible copy shall be produced.

R. No agreement by Plaintiffs or any of their representatives purporting to modify, limit, or otherwise vary the scope or terms of this Request is binding on Plaintiffs unless confirmed

or acknowledged in writing by counsel for Plaintiffs.

**DOCUMENTS TO BE PRODUCED**

The following documents and materials produced to you by any of the Vasquez Perdomo Defendants in the Vasquez Perdomo Action:

1. All training or guidance provided to agency personnel related to roving patrols, warrantless arrests, and actions at sensitive locations on topics including but not limited to: the difference between a consensual encounter and a seizure; the factors that may be considered in deciding whether to initiate a consensual encounter or arrest including a vehicle stop; appropriate use of force; other considerations for initiating and conducting a roving patrol, warrantless arrest, or action at a sensitive location; and documentation requirements for roving patrols, warrantless arrests, and actions at sensitive locations.
2. All documents relating to the conduct of operations between June and August, 2026, including Field Operations Worksheets, targeting sheets, operations plans, pre-operations briefings, intelligence reports, targeting packages, notes, videos (including body camera footage), Administrative Warrants, Form I-213s, database entries, post-operation briefings, after-action reports, other communications describing or characterizing the operations, documents reflecting review of the operations, and documents reflecting any arrest quotas.
3. Communications through messaging of any kind (including text messaging, chats, or messaging through a mobile application) between or including any Vasquez Perdomo Defendants or agency personnel concerning roving patrols, warrantless arrests, or actions at sensitive locations.
4. The Vasquez Perdomo Defendants' response to, and all documents referenced, reviewed, or relied upon by the Vasquez Perdomo Defendants in responding to, CHIRLA's Expedited

Interrogatories to Defendant Noem, Set One, No. 4, Dkt. 211-1.

5. All documents filed with the Court as attachments or evidence in support of any motion, response, or other filing by the Vasquez Perdomo Defendants.

DATED: May 14, 2026

KWAME RAOUL
*Attorney General of Illinois*

by:

*/s/ Vikas Didwania*
CARA HENDRICKSON
Executive Deputy Attorney General
PAUL BERKS
VIKAS DIDWANIA
Complex Litigation Counsels
MARY GRIEB
ELIZABETH JORDAN
EMILY HIRSCH
ALEXANDRA REED
CHRISTINA BEELER
R. HENRY WEAVER
MOLLY PETCHENIK
REBEKAH NEWMAN
Assistant Attorneys General
Office of the Illinois Attorney General
115 South LaSalle Street
31st Floor
Chicago, Illinois 60603
(312) 814-3000
Cara.Hendrickson@ilag.gov

*Counsel for the State of Illinois*

MARY B. RICHARDSON-LOWRY
*Corporation Counsel of the City of Chicago*

By: */s/ Chelsey Metcalf*
Stephen Kane
John Hendricks
Rebecca Hirsch
Chelsey Metcalf
Rachel Zemke

Psalm Brown
John Kauffman
City of Chicago Department of Law
121 North LaSalle Street, Room 600
Chicago, Illinois 60602
312-744-6934
stephen.kane@cityofchicago.org
*Counsel for the City of Chicago*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

BRANTLEY T. MAYERS
Counsel to the Assistant Attorney General
Civil Division

ANDREW I. WARDEN
C. LEE REEVES, II
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Telephone: (202) 616-0773
E-mail: Lee.Reeves2@usdoj.gov

*Attorneys for the United States*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re Subpoena to Coalition for Humane Immigrant Rights (CHIRLA)**<br><br>Served in the United States District Court for the Northern District of Illinois (Case No. 26-cv-321)<br><br>STATE OF ILLINOIS *et al.*,<br>Plaintiff,<br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br>Defendants. | **UNITED STATES OF AMERICA'S CERTIFICATION AND NOTICE OF INTERESTED PARTIES** |

I, ANDREW I. WARDEN, declare and states as follows:

1. I am an Assistant Branch Director with the United States Department of Justice, Civil Division. I am one of the attorneys assigned to represent Defendants in *State of Illinois et al. v. Department of Homeland Security et al.*, Case No. 26-cv-321 (N.D. Ill.). I submit this declaration in compliance with Local Rule 7-3.

2. I make this declaration based upon my personal knowledge. If called as a witness and placed under oath, I could and would testify thereto.

3. On June 23, 2026, I conferred by way of videoconference with attorneys representing the State of Illinois, the City of Chicago, and Plaintiffs in *Vasquez Perdomo v. DHS*, 25-cv-05605 (C.D. Cal.). Attorneys from the Department of Justice, Civil Division representing the federal Defendants in *Vasquez Perdomo* also attended the conference.

4. During the telephone conference, the Department of Justice attorneys discussed the arguments the federal government planned to assert in support of the planned motion to quash the subpoena issued by the State of Illinois and the City of Chicago to Coalition for Humane Immigrant Rights.

5. Although the parties had a productive discussion and conferred in good faith, the parties were unable to reach a resolution that eliminates the necessity of the federal government's motion.

6. Counsel for the State of Illinois and the City of Chicago stated that they oppose the motion.

7. Counsel for the Coalition for Humane Immigrant Rights stated that they take no position on the motion.

//

//

//

//

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 1, 2026

/s/ *Andrew I. Warden*

ANDREW I. WARDEN
Assistant Branch Director (IN #23640-49)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Telephone: (202) 616-5084
E-mail: Andrew.Warden@usdoj.gov

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

BRANTLEY T. MAYERS
Counsel to the Assistant Attorney General
Civil Division

ANDREW I. WARDEN
C. LEE REEVES, II
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Telephone: (202) 616-0773
E-mail: Lee.Reeves2@usdoj.gov

*Attorneys for the United States*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

**In re Subpoena to Coalition for Humane Immigrant Rights (CHIRLA)**

Served in the United States District Court for the Northern District of Illinois (Case No. 26-cv-321)

STATE OF ILLINOIS *et al.*,
Plaintiff,
v.

DEPARTMENT OF HOMELAND SECURITY, *et al.*,
Defendants.

**UNITED STATES OF AMERICA'S CERTIFICATION AND NOTICE OF INTERESTED PARTIES**

I, ANDREW I. WARDEN, declare and states as follows:

1. I am an Assistant Branch Director with the United States Department of Justice, Civil Division. I am one of the attorneys assigned to represent Defendants in *State of Illinois et al. v. Department of Homeland Security et al.*, Case No. 26-cv-321 (N.D. Ill.). I submit this declaration in compliance with Local Rule 7-3.

2. I make this declaration based upon my personal knowledge. If called as a witness and placed under oath, I could and would testify thereto.

3. On June 23, 2026, I conferred by way of videoconference with attorneys representing the State of Illinois, the City of Chicago, and Plaintiffs in *Vasquez Perdomo v. DHS*, 25-cv-05605 (C.D. Cal.). Attorneys from the Department of Justice, Civil Division representing the federal Defendants in *Vasquez Perdomo* also attended the conference.

4. During the telephone conference, the Department of Justice attorneys discussed the arguments the federal government planned to assert in support of the planned motion to quash the subpoena issued by the State of Illinois and the City of Chicago to Coalition for Humane Immigrant Rights.

5. Although the parties had a productive discussion and conferred in good faith, the parties were unable to reach a resolution that eliminates the necessity of the federal government's motion.

6. Counsel for the State of Illinois and the City of Chicago stated that they oppose the motion.

7. Counsel for the Coalition for Humane Immigrant Rights stated that they take no position on the motion.

//

//

//

//

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 1, 2026

/s/ *Andrew I. Warden*
ANDREW I. WARDEN
Assistant Branch Director (IN #23640-49)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Telephone: (202) 616-5084
E-mail: Andrew.Warden@usdoj.gov