**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | No. 26-cv-321<br><br>Hon. Sara L. Ellis,<br>District Judge |

**OPPOSITION TO DEFENDANTS' MOTION TO QUASH THIRD-PARTY SUBPOENA**

Pursuant to this Court's authorization, Plaintiffs sought documents already produced in the *Vasquez Perdomo*[1] litigation regarding Defendants' unlawful immigration actions that are relevant to both matters. Now, Defendants seek to quash that subpoena. The Court should deny Defendants' motion. The subpoena seeks documents relevant to establishing Defendants' unlawful policies and conduct; for example, it seeks training materials used across operations. It is striking that Defendants assert irrelevance when they are the ones to raise the factual dispute that the alleged illegal activities merely reflected "disparate incidents involving DHS agents." Moreover, Defendants lack standing to raise many of their objections, and the protective order currently in effect provides adequate assurances of confidentiality, especially for material purportedly subject to the law enforcement privilege, a qualified privilege that primarily protects against public disclosure.

[1] *Vasquez Perdomo, et al. v. Noem, et al.*, No. 25-cv-05604 (S.D. Cal.).

Defendants' primary contention is that the subpoena would be unduly burdensome, because it would require them to review the thousands of responsive documents produced in the *Vasquez Perdomo* litigation for privilege. This contention is wrong. Plaintiffs have offered to comply with the same clawback agreement in place in the *Vasquez Perdomo* litigation. Defendants rejected that proposal, but this Court should impose the same procedure here. Alternatively, this Court can review the same materials the *Vasquez Perdomo* Court did and reach its own decision on privilege, which will provide guidance for the remaining documents like what happened in *Vasquez Perdomo*. Defendants cannot have it both ways: obtain the benefits of a blanket privilege assertion without having to litigate its propriety. It is not unduly burdensome for Defendants to simply brief a privilege assertion of their own making.

## BACKGROUND

***Overview of the Los Angeles and Chicago litigations***

Plaintiffs and Intervenors in *Vasquez Perdomo* allege that from June 2025 through August 2025 officers and agents of the Department of Homeland Security (DHS) and the United States Customs and Border Patrol, among others, engaged in a campaign of violent and unlawful conduct intended to "terrorize" residents throughout the Los Angeles area "under the guise of federal immigration enforcement." *Vasquez Perdomo v. Noem*, ECF No. 141, ¶ 194. Plaintiffs alleged that the principal tactic of this campaign was to deploy "[m]asked federal agents who refuse to identify themselves [to] stop[ ], arrest[ ] and detain[ ] people all over the County" without any legal basis and hold them in inhumane and overcrowded conditions. *Id.* Individual victims and organizations whose members suffered harm from the "roving patrols" and unlawful detentions sued, alleging the practices violated the Fourth Amendment to the U.S. Constitution, and exceeded statutory and regulatory limits on the government's authority to question and detain without a warrant. *Id.* ECF

No. 16, Counts I-IV. Governmental entities in the Los Angeles area intervened, asserting that the policy of warrantless arrests at or near courthouses also violated the Tenth Amendment and the Administrative Procedure Act. *Id.* ECF No. 194, Counts V-VIII. Defendants moved to dismiss both the complaint and the intervenor complaint; the Court denied those motions. *Id.* ECF Nos. 236, 419. The court ordered the federal government to respond to discovery, *id.* ECF No. 223, and the defendants have produced thousands of pages of documents, including training and guidance materials, documents related to the planning and conduct of operations, and communications by and from the defendants related to roving patrols, warrantless arrests and enforcement actions at or near courthouses.

In the fall of 2025, the same named defendants in *Vasquez Perdomo*, among others, implemented a strikingly similar unlawful campaign in the Chicago metropolitan area. From September 2025 through December 2025, Defendants "rampaged . . . through Chicago and surrounding areas, lawlessly stopping, interrogating and arresting residents, and attacking them with chemical weapons." *State of Illinois, et al. v. Dep't of Homeland Security, et al.*, 26-cv-321 (N.D. Il) ("*Illinois v. DHS*"), ECF No. 1 ¶ 1. As in Los Angeles, governmental entities sued, alleging, *inter alia*, that the program of roving patrols, warrantless arrests, and arresting and detaining persons at courthouses and other sensitive locations violated the Tenth Amendment and the Administrative Procedure Act. *Illinois v. DHS*, ECF No. 1, Counts I, III-IV, VII-VIII, XI-XII. The Defendants moved to dismiss the complaint, arguing – *inter alia* – that the complaint did not allege that the roving patrols and warrantless arrest policies were justiciable agency actions, but merely reflected "disparate incidents involving DHS agents." *Illinois v. DHS*, ECF No. 44 at 33.

***Procedural History Of Subpoena-Related Litigation***

While the motion to dismiss is pending, Plaintiffs moved for leave to seek information the federal government already had produced in *Vasquez Perdomo* "concerning roving patrols and warrantless arrests," including documents they produced related to "trainings and the nature of warrantless stops." *Id.* ECF No. 55 at 3. The Court granted the motion, explaining that "if claims survive the motion to dismiss that plaintiffs would be essentially asking for this same discovery anyway." *See* Ex. 1 to Mot. to Quash, Transcript of April 23, 2026 Hearing, ("Hearing Tr."), *Illinois v. DHS*, ECF No. 83, at 38. Plaintiffs served a third-party subpoena to obtain limited materials produced in discovery in *Vasquez Perdomo*, as this Court authorized. *See id.*

On May 14, 2026, Plaintiffs served a third-party subpoena on the Coalition for Humane Immigrant Rights ("CHIRLA"), a plaintiff in *Vasquez Perdomo*. On July 1, 2026, Defendants filed on the *Vasquez Perdomo* docket a motion for protective order and to quash the subpoena, on which CHIRLA takes no position. Pursuant to Plaintiffs' motion and CHIRLA's consent, and over Defendants' opposition, the California court transferred Defendants' motion to this Court.

***The California Court's Privilege Rulings***

In the *Vasquez Perdomo* litigation, Defendants sought to assert attorney-client and work-product privileges to withhold production of training and guidance materials. The magistrate judge rejected those assertions in large part. *Vasquez Perdomo*, ECF No. 338, at 2. The attorney-client privilege applies to confidential communications by a client to an attorney for obtaining legal advice, not to "general-purpose materials prepared for educational and training purposes that teach about the laws to be enforced and constitutional and statutory constraints." *Id*. at 4. The court further noted that prior versions of some of the documents had been made publicly available by Defendants. *Id*. at 7. And the documents were not prepared in anticipation of litigation for the work

product privilege to apply; they were prepared "to educate on the law and the agents' duties and obligations." *Id*. at 9.

The magistrate judge similarly rejected Defendants' assertion of law enforcement privilege to withhold documents concerning immigration operations in Los Angeles. *Id.* ECF No. 365 at 1. The privilege, to the extent it exists, protects the confidentiality of investigative files in order to prevent harm to law enforcement efforts that might arise from their ***public*** disclosure. *Id*. at 3. Among the many reasons to reject assertion of the privilege, the court noted that even if defendants had shown that public disclosure of the information at issue could prove harmful, the disclosures here would occur under the protection of a confidentiality order. *Id*. at 9.

Defendants lodged objections with the district court to both privilege rulings by the magistrate judge. While the objections have remained pending, Defendants have produced unredacted documents to plaintiffs in *Vasquez Perdomo* under a clawback agreement. If Defendants succeed with their objections, the documents will be returned to them.

## LEGAL STANDARD

Defendants, as the movants seeking to quash or modify a subpoena, bear the burden of persuasion. *Malibu Media, LLC v. John Does 1-6*, 291 F.R.D. 191, 196 (N.D. Ill. 2013); *see Williams v. Blagojevich*, No. 05 C 4673, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008) (noting that the burden belongs to the "party opposing discovery").

## ARGUMENT

### I. Defendants Lack Standing to Challenge Relevance, and the Subpoena Seeks Relevant Information.

A party moving to quash a subpoena served on a non-party must establish standing. That can be a "difficult task," because a "party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right." *United States ex*

*rel. Ortiz, Mount Sinai Hosp.*, 169 F.Supp.3d 538, 545 (S.D.N.Y. 2016). Such interests include "the assertion of work product or attorney-client privilege, interference with business relationships, or production of private information about the party that may be in the possession of a third party." *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 187 (N.D. Ill. 2013). However, a party lacks standing to challenge a subpoena to a non-party on relevance grounds. *Id.*; *see also Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811, 815 (N.D. Ill. 2015) (noting that "a party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden.") (collecting cases). Defendants' relevance challenge should be rejected.

Regardless, Defendants' relevance objection lacks merit. Defendants argue that documents about Los Angeles operations cannot be relevant to this case about Chicago operations. *See Illinois v. DHS*, ECF. No. 83, at 15. Yet, the "blueprint" for the Chicago operation was established in Los Angeles,[2] and it was President Trump who said, "We saved Los Angeles" and "could do the same thing in Chicago" before starting Operation Midway Blitz.[3] Through this subpoena, Plaintiffs seek evidence of the implementation of Defendants' unlawful policies and conduct that form the basis of the complaint, including documenting policies that Defendants deny exist. *See Nava v. Dep't of Homeland Security*, 435 F. Supp. 3d 880, 901-02 (N.D. Ill. 2020) (ICE's contemporaneous implementation of similar warrantless arrest policy in New York supported "the inference that the policy exists – at least in the context of large scale enforcement actions in the Chicago area" and was a discrete agency action under the APA). It was Defendants who asserted, as a factual matter,

[2] *Trump Administration Plance Big Immigration Enforcement Operation in Chicago as Soon as Next Week*, CNN (Aug. 28, 2025), https://news.wttw.com/2025/08/28/trump-administration-plans-big-immigration-enforcement-operation-chicago-soon-next-week.
[3] Alexandra Hutzler, *'We'd love to go into Chicago,' Trump says after controversy over 'war' meme*, ABC News (Sept. 8, 2025), https://abcnews.com/Politics/wed-love-chicago-trump-after-controversy-war-meme/story?id=125365999.

that the alleged illegal activities merely reflected "disparate incidents involving DHS agents." *Illinois v. DHS*, ECF No. 44 at 33. Having created this factual dispute, they cannot use relevance as a shield; the *Vasquez Perdomo* documents will show whether these actions were merely "disparate incidents."

Plaintiffs have alleged that Defendants initiated Operation Midway Blitz in Chicago in violation of the Tenth Amendment, engaged in tactics in excess of the authority of the Border Patrol and other Defendants, and unlawfully implemented seven distinct policies in violation of the Administrative Procedure Act, including (a) a roving patrol policy of "directing immigration agents to question any individual about their immigration status" without any articulable basis to believe the person is subject to removal; (b) a warrantless arrest policy of "making civil immigration arrests without a warrant, without probable cause that the subject is unlawfully in the United States and presents a flight risk;" and (c) a "policy of broadly authorizing the arrest of immigrants at or near courthouses." *See Illinois v. DHS*, ECF. No. 1 ¶¶ 349-351, 381, 411. Defendants dispute existence of six of the seven policies Plaintiffs alleged, *Id.* ECF No. 44, at 41.

In response to Defendants' arguments, Plaintiffs seek to establish the existence, and the attendant unlawful implementation, of these policies, which are in force across multiple jurisdictions. Evidence including training materials and documentation are of central importance in proving the existence of such policies—and are precisely the documents subject to the subpoena. Documents showing Defendants trained officers to engage in the alleged illegal conduct is strong evidence of the existence of an agency policy. Likewise, other categories of documents, including communications, reports, and recordings relating to operations, are directly relevant to establishing that the challenged policies exist and are being applied, in Illinois and elsewhere. And evidence of widespread policies and practices also establishes the use of tactics at issue in Plaintiffs' Tenth

Amendment claims. Indeed, Defendants admit that certain officers active in Los Angeles were "temporarily deployed from other duty stations across the nation." *See id*. ECF No. 83, at 12. This admission illustrates the national scope of the policies and conduct at issue and undermines any claim that the relevance of the evidence uncovered by the *Vasquez Perdomo* plaintiffs is geographically limited.

The fact that Defendants have engaged in unlawful conduct and applied unlawful policies outside the specific geographic area of Operation Midway Blitz in no way lessens the relevance of the documents establishing those policies and activities. Rather, the widespread, extended engagement in those policies and practices is important evidence of Plaintiffs' claims and will shape their arguments and discovery requests as the litigation progresses. *See*, *e.g.*, *Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168, 1208 (S.D. Cal. 2019) (finding agency action based on "various instances of U.S. government officials' acknowledgement of [the unwritten] policy"); *id.* (finding "extensive allegations of alleged turnbacks of asylum seekers by CBP officers . . . along U.S.-Mexico border . . . plausibly point to the existence of an unwritten policy"). The subpoena seeks only relevant documents, and there is no basis to prevent compliance.

## II. The Subpoena Does Not Overly Burden Defendants.

While a party can assert privilege to challenge a nonparty subpoena, Defendants have not done so here. Instead, they raise a challenge of burden, arguing that it would be unduly burdensome for them to review the documents for privilege. A non-recipient lacks standing to raise a burden-related challenge, because as the Court reasoned, "it's not as if this is putting a burden really on the government if the plaintiffs are serving these subpoenas to get discovery that was already produced and they're serving it on the plaintiffs in those cases." *Id*. at 28, line 23. *See Parker*, 291 F.R.D. at 187 (making the same point).

Defendants' self-imposed burden is a red herring. Defendants argue it would be burdensome for them to review each produced document and decide whether they should assert privilege over any portion of the documents. But that is entirely unnecessary. Plaintiffs have offered to be bound by the same clawback agreement that governs the *Vasquez Perdomo* litigation (and the protective order in place in this litigation provides similar assurances of nondisclosure as in *Vasquez Perdomo*). *See Trs. of Chicago Reg'l Council of Carpenters Pension Fund v. Drive Constr., Inc.*, No. 1:19-CV-2965, 2023 WL 9315453, at *3 (N.D. Ill. May 8, 2023) (denying motion to quash where movants "have not explained why [their] interests will not be adequately protected by the confidentiality order already in place . . . . [and] plaintiffs have agreed to stipulate that all documents produced . . . in response to the subpoena will be produced in accordance with the confidentiality order."). This agreement would impose no burden on Defendants and would allow them to continue to retain their rights to their privilege assertions while complying with the Court's direction to get these documents to Plaintiffs expeditiously.

Defendants have rejected this offer because they apparently want a second bite at the apple and to re-raise their privilege arguments in front of this Court. That's fine also. This Court can evaluate the handful of documents that the magistrate judge in *Vasquez Perdomo* reviewed and rule on the privilege assertions that Defendants unsuccessfully raised there. That ruling will provide guidance as to other document productions, as did the magistrate judge's ruling in California. This alternative also would impose no burden on Defendants.

What Defendants really want is to have it both ways: get the wholesale benefits of privilege without having to assert and litigate it. That's not right. Defendants effectively ask the Court to pre-judge their as of yet unasserted privilege objections with respect to an unspecified number of documents. *See Soto v. Kale Realty, LLC*, No. 13 C 8002, 2016 WL 11953040, at *3 (N.D. Ill. July

25, 2016) ("[T]he party moving to quash must explicitly establish that []disclosure will work a clearly defined and serious injury.[] . . . Mere assertions unsupported by specific contentions are not enough."); *Hallett v. Vill. of Richmond*, No. 05 C 50044, 2006 WL 2088214, at *2 (N.D. Ill. July 25, 2006) ("To even assert the law enforcement investigative privilege, a responsible official in the department must lodge a formal claim of privilege, after actual personal consideration, specifying with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege.") (quotations omitted); *see also Powell v. UHG 1 LLC*, No. 1:23-CV-06389, 2024 WL 4286960, at *6 (N.D. Ill. Sept. 25, 2024) ("[T]he [movants'] contention alone does not establish that its policies and procedures are trade secrets or confidential research, development, or commercial information as Rule 45 requires, nor does it demonstrate the harm associated with disclosure.").

While Defendants make sweeping invocations of privilege (without actually moving on that basis), they would face no burden from CHIRLA's compliance with the subpoena, protected by the limitations placed by this Court and the Protective Order that the parties negotiated and agreed to. The resources required to litigate their own privilege assertions are no more than the most basic requirements of litigation.

In effect, Defendants' theory amounts to the contention that having to litigate at all is unduly burdensome. Having to file a brief is not unduly burdensome. Discovery always requires parties to expend some effort, and that inconvenience alone does not make the burden undue. Parties must "accept the invasive nature of discovery" as a part of litigation, whereas nonparties "experience an unwanted burden." *See Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 1939358, at *2 (N.D. Ill. Apr. 22, 2020). Rule 45 recognizes this reality as it concerns itself with the burden on the *nonparty*, not on a party movant. *See id.* ("Rule 45 also instructs courts that

they 'must protect' non-parties 'from significant expense resulting from compliance' with a subpoena. Non-parties are afforded this consideration because they have a different set of expectations than parties.") (quoting Fed. R. Civ. P. 45(d)(2)(B)(i), (ii)); *see also Jabil, Inc. v. Essentium, Inc.*, No. 8:21-MC-39-KKM-SPF, 2021 WL 1814158, at *3 (M.D. Fla. May 6, 2021) (denying motion to quash third-party subpoena "due to the expense and time involved in Jabil's review of the documents produced by the Non-Parties" where "Jabil's concern is its own time and expense required to review the documents produced by the Non-Parties, not the Non-Parties' time and expense complying with the subpoenas," and noting that "Jabil's burden . . . is self-imposed."). Indeed, the purpose of the third-party subpoena was to streamline the discovery process by allowing Plaintiffs to obtain documents Defendants already reviewed and produced, without requiring any action at all on their part. Any minimal burden Defendants face from their decision to object is of their own making and outside the scope of Rule 45. *See Parker*, 291 F.R.D. at 187. ("Relevance, burden or service objections fall to the subpoena's recipient to make.").

**III. Defendants Lack Standing to Challenge the Subpoena's Authorization, and the Subpoena Is Authorized.**

Defendants next challenge the subpoena as exceeding this Court's authorization. They lack standing to raise this challenge, as they assert no personal privilege or right. *See Parker*, 291 F.R.D. at 186-87 (noting that a party lacks standing to challenge a subpoena on grounds that it violated the Federal Rules of Civil Procedure, was outside the court's subpoena power, or that "it sought materials beyond the subject matter limitations of a previous order"). Allowing a party to challenge a subpoena on such grounds "would effectively wipe out the rule" holding that a party generally lacks standing to challenge a nonparty subpoena. *Parker*, 291 F.R.D. at 187. A party can always assert it has "an interest in the administration of the legal proceeding," like the proper interpretation of a court order. *Id*.

In any case, while Defendants are correct that the Court authorized the subpoenaing of documents over which Defendants had not asserted a law enforcement privilege, the order necessarily presumed that Defendants would not assert potential privilege over *every page of every document they have produced*. Defendants suggested there were documents that could be produced that would avoid any privilege issues. Hearing Tr., *Illinois v. DHS*, ECF No. 83, at 40, lines 21-24. Even today, Defendants do not specify which of the requests they believe exceed the scope of authorization, nor identify any documents or subsets of documents they believe were impermissibly sought.

Plaintiffs agreed to exclude from the subpoena any documents that are the subject of ongoing litigation over law enforcement privilege. *See id.* at 41, line 20. Defendants have stretched this compromise to the breaking. It would render meaningless the Court's authorization if that reasonable limitation were read to prevent production of all documents responsive to a request. Plaintiffs merely seek documents that this Court authorized them to obtain which have already been produced to CHIRLA. The Court recognized that initiating this limited discovery is advisable. *See id.* at 37, line 8; *id.* at 39, line at 7; *id.* at 42, line 3. As the Court explained, this subpoena is "really just allowing the plaintiffs here to start sorting through the discovery in order to determine what else they need from the government." *Id.* at 29, line 2.

## IV. The Protective Order In This Matter Protects Any Confidential Documents From Disclosure.

The Protective Order in place in this matter is sufficient to assuage any concerns regarding disclosure that Defendants raise. *Jackson v. Ashcroft*, No. 00 C 4073, 2002 WL 1968567, at *4 (N.D. Ill. Aug. 23, 2002) (the law enforcement privilege is "to protect any sensitive information from becoming public knowledge" and noting the court could enter a protective order); *see also Illinois v. DHS*, ECF No. 66. The Court authorized this subpoena with the understanding that a

Protective Order was forthcoming and instructed that production pursuant to the subpoena should not begin until such order was in place. *See id.* ECF No. 83, Hearing Tr. at 42, line 2. The parties negotiated, with the Court's assistance, a Protective Order sufficient to safeguard any sensitive or confidential information disclosed in this matter. *See id.* ECF No. 66, at 5. The federal government agreed to the provisions in that document. Defendants have provided no basis to believe that order would be insufficient with respect to the documents produced in that case, nor why any documents covered by the subpoena would be so much more sensitive than those at issue in this underlying matter as to require different terms for protection. *See id.* ECF No. 83 at 19. The Protective Order will cover any documents produced pursuant to the subpoena, and any objections raised on this front are misplaced.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' motion for protective order and to quash the subpoena of documents from non-party CHIRLA.

Dated: September 28, 2026

Respectfully submitted,

KWAME RAOUL
*Attorney General of Illinois*

By: *<u>/s/ Molly Petchenik</u>*
CARA HENDRICKSON
Executive Deputy Attorney General
PAUL BERKS
VIKAS DIDWANIA
Complex Litigation Counsels
MOLLY PETCHENIK
Assistant Attorney General
Office of the Illinois Attorney General
115 South LaSalle Street
31st Floor

Chicago, Illinois 60603
(312) 814-3000
Vikas.Didwania@ilag.gov
*Counsel for the State of Illinois*

MARY B. RICHARDSON-LOWRY
*Corporation Counsel of the City of Chicago*

By: *<u>/s/ Rebecca Hirsch</u>*
Stephen Kane
John Hendricks
Rebecca Hirsch
Chelsey Metcalf
Rachel Zemke
Psalm Brown
John Kauffman
City of Chicago Department of Law
121 North LaSalle Street, Room 600
Chicago, Illinois 60602
(312) 744-6934
stephen.kane@cityofchicago.org
*Counsel for the City of Chicago*